UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FRED HOFFMAN, III, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-333 |
| | § | |
| JAVIER MURO, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

Plaintiff Fred Hoffman is a Texas inmate appearing *pro se* and *in forma pauperis*. He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A. For purposes of screening, Plaintiff has stated a retaliation claim against **ASSISTANT WARDEN COREY FURR** in his official capacity for injunctive relief. Accordingly, it is respectfully recommended that this claim against him be **RETAINED.** The undersigned will order service on this defendant.

The undersigned further recommends for the reasons set forth below that Plaintiff's remaining claims against all Defendants be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II. PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID). Plaintiff's claims in this lawsuit occurred in connection with his current assignment to the McConnell Unit in Beeville, Texas.

On October 4, 2018, Plaintiff filed his original complaint, naming the following officials as defendants: (1) Sergeant Javier Muro; (2) Lieutenant Christi L. Garcia; (3) Sergeant Cinthia Guzman; (4) Veronica Inmon, Classification Case Manager (CCM) II; (5) Corey Furr, Assistant Warden; (6) Lieutenant John C. Gonzales; (7) Officer Sonia Gutierrez; and (8) Major James Thompson. Despite the various conclusory labels that Plaintiff has attached to his claims, he primarily asserts that Defendants have engaged in a retaliatory campaign of harassment against him. Plaintiff further alleges that Defendants have violated his constitutional rights in many other aspects. Plaintiff seeks declaratory and injunctive relief in which he generally requests the cessation of all unconstitutional or unlawful conduct committed by Defendants against him.

A *Spears*[1] hearing was conducted on October 30, 2018. The following representations were made either at the *Spears* hearing or in Plaintiff's original complaint

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

(D.E. 1): Plaintiff is 42 years old. In May 2011, he entered into TDCJ custody and was initially housed at the Byrd Unit. Prior to his transfer into TDCJ custody, Plaintiff was housed in an Oklahoma federal prison pursuant to a conviction out of the Western District of Oklahoma. Plaintiff arrived at the McConnell Unit sometime later in May 2011.

Prior to his incarceration, Plaintiff was diagnosed with various chronic seizure disorders, diabetes, and Post-Traumatic Stress Disorder (PTSD), He receives medications for each of these conditions. Plaintiff, in prison litigation terms, is known as a writ writer. He routinely files lawsuits or otherwise assists other inmates in preparing and submitting grievances, civil rights actions, or habeas corpus actions.

For example, in June 2016, Sergeant Guzman caught a prisoner from Plaintiff's housing section masturbating. Based on this prisoner's actions, Sergeant Guzman punished every prisoner in Plaintiff's housing section by only allowing them ice water on two occasions over a three-day period despite the extreme heat. Plaintiff drafted and submitted over thirty grievance against Sergeant Guzman on behalf of himself and other prisoners to complain about the limited access to cold water. The prisoners ultimately received full access to cold water, and Sergeant Guzman was removed from Plaintiff's housing section.

Plaintiff alleges Sergeant Guzman told Plaintiff he had "rocked the boat" in helping other offenders file grievances and began to assist other named defendants in conducting a retaliatory campaign of harassment against Plaintiff. Plaintiff contends that

Sergeant Guzman retaliated by initiating false disciplinary cases against Plaintiff and denying Plaintiff the ability to present evidence on his behalf at his disciplinary hearings.

Sergeant Muro, who replaced Sergeant Guzman in Plaintiff's housing section, is alleged to have retaliated against Plaintiff for filing grievances against Sergeant Guzman by also limiting Plaintiff and other inmates in his housing section access to cold water twice over another three-day period of extreme heat. Sergeant Guzman told Plaintiff not to mess around with his girlfriend, who happened to be Sergeant Guzman. Nevertheless, Plaintiff assisted other prisoners in grieving this issue. Plaintiff alleges Sergeant Muro threatened Plaintiff with a disciplinary case for every grievance filed against him. Plaintiff persisted and assisted twenty prisoners in filing their grievances.

Plaintiff alleges Sergeant Muro retaliated by restraining Plaintiff's hands and forcibly moving Plaintiff to the barber shop where Sergeant Muro directed the prison barber to shave off Plaintiff's religious beard.[2] Sergeant Muro reportedly told Plaintiff that he was "going to learn to shut [his] mouth."

Plaintiff further states that Sergeant Muro continued his retaliatory campaign of harassment as follows: (1) while Plaintiff was transported to the Beeville Hospital to be treated for a stroke, Sergeant Muro entered Plaintiff's cell and threw away copies of Plaintiff's exhibits and witness affidavits that incriminated Sergeant Muro and other defendants; (2) Sergeant Muro caused damage to Plaintiff's typewriter; (3) Sergeant Muro denied Plaintiff a medical lay-in which resulted in a nine-month delay in Plaintiff having his glasses fixed; (4) on November 29, 2016, Sergeant Muro denied Plaintiff two

---

[2] Plaintiff testified that he practices the Jewish faith.

scheduled legal visits, resulting in a denial of access to courts. According to Plaintiff, the exhibits confiscated consisted of cases brought in the past by inmates against Sergeant Muro. Sergeant Muro's actions prevented Plaintiff from using these exhibits against Sergeant Muro in state court.

With regard to Lt. Garcia, Plaintiff alleges that she participated in the retaliatory campaign of harassment against Plaintiff by: (1) refusing to investigate certain aspects of his ombudsman complaints against Sergeant Muro and other defendants; (2) bringing false disciplinary cases against Plaintiff; (3) improperly finding Plaintiff guilty in disciplinary cases where she had presided as the disciplinary hearing officer (DHO); and (4) denying Plaintiff a diabetic snack, a religious meal, and insulin.

Plaintiff alleges that CCM Inmon and Major Thompson, in their positions on the Unit Classification Committee (UCC), participated in the retaliatory campaign of harassment against Plaintiff by denying him an upgrade in his custody classification status from G4 to G2, despite the recommendations of TDCJ and Huntsville staff for the upgrade. During the hearing on Plaintiff's classification status, CCM Inmon and Major Thompson harassed Plaintiff about his religious beard being too long and his filing of grievances.

Plaintiff claims that Assistant Warden Furr was placed on notice of the abusive and retaliatory behavior committed by other defendants through I-60 complaints, letters, his handling of numerous Step 1 grievances, and conversations with Plaintiff and his family. Plaintiff alleges Assistant Warden Furr participated in the retaliatory campaign of harassment against Plaintiff by: (1) taking no action to correct Defendants' behavior;

(2) signing various Step 1 grievances without providing an answer; (3) failing to investigate the assault that occurred against Plaintiff based on the cutting of his beard; and (3) reducing the time Plaintiff could visit with his wife from four hours to two hours.

Plaintiff alleges that Lt. Gonzales was the ombudsman investigator in connection with a complaint lodged by Plaintiff's family over disciplinary cases brought against Plaintiff by Lt. Garcia. Plaintiff alleges Lt. Gonzales participated in the retaliatory campaign of harassment against Plaintiff by using his position as Ombudsman investigator to influence testimony against Plaintiff and in favor of Lt. Garcia, coerce new testimony, and threaten perjury charges against Plaintiff's witnesses.

Plaintiff further alleges Officer Gutierrez worked with Sergeant Muro and Guzman. She participated in the retaliatory campaign of harassment against Plaintiff by: (1) refusing to allow Plaintiff showers and food; (2) denying Plaintiff a medical lay-in to get his glasses fixed, which caused him to have headaches for nine months until his glasses were fixed; and (3) stealing Plaintiff's property without providing him a property settlement.

### III. LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state

a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.   DISCUSSION

### A.   Retaliation

#### (1)   *Retaliatory Campaign of Harassment*

Plaintiff claims that Defendants engaged in a retaliatory campaign of harassment against him. Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris*, 449 F.3d at 686. Thus, "[a] prison official may not retaliate against or harass an inmate for

exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected inmates." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.*

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim." *Jones*, 188 F.3d at 325. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred.

*Id.* In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Woods*, 60 F.3d at 1166.

Plaintiff alleges that each defendant participated in a retaliatory campaign of harassment against him after he brought grievances on behalf of himself and several inmates against Sergeant Guzman and Sergeant Muro for allowing them only limited access to cold water during two three-day periods of extreme heat. Plaintiff's allegations indicate that, following his filing of his grievances, he was subjected to many adverse actions including the following: (1) the filing of false disciplinary cases by several defendants; (2) forcibly being restrained by Sergeant Muro so that his religious beard could be removed; (3) the denial of a medical lay-in by Sergeant Muro and Officer Gutierrez which caused a nine-month delay in fixing his glasses; (4) the confiscation of Plaintiff's legal materials and destruction of his typewriter by Sergeant Muro; (5) the denial of two scheduled legal visits by Sergeant Muro; (6) the refusal by Lt. Garcia to investigate Plaintiff's ombudsman complaint against Sergeant Muro; (7) improper findings of guilt by Lt. Garcia in disciplinary cases where she was the DHO; (8) interference by Lt. Gonzalez in in connection with Plaintiff's ombudsman complaint against Lt. Garcia; (9) the failure of Assistant Warden Furr to take any action to correct the retaliatory conduct committed by other defendants; and (10) the occasional denial of food, showers, and medicine by Lt. Garcia and Officer Gutierrez.

Taken as true, Plaintiff's allegations state a retaliation claim as they suggest a pattern of retaliatory conduct. While the acts of retaliation by themselves do not

constitute constitutional violations, they do demonstrate a chronology of events from which retaliation may plausibly be inferred. Accordingly, Plaintiff's allegations are sufficient at this stage to state a retaliation claim. The undersigned now turns toward determining the proper defendant in this case as Plaintiff seeks injunctive relief and no money damages.

### *(2) Proper Defendant*

Plaintiff seeks injunctive relief with respect to his allegations of a retaliatory campaign of harassment. Plaintiff names eight defendants in his original complaint, but none of the named defendants singularly orchestrated the retaliation or participated in all incidents. For purposes of obtaining injunctive relief, Assistant Warden Furr is the individual most likely able to fashion the relief Plaintiff is seeking regarding his retaliation claims. Because Assistant Warden Furr appears to be best person to implement the injunctive relief requested, the undersigned respectfully recommends that he remain in this case and that the other individual defendants be dismissed as to Plaintiff's retaliation claim.[3]

### B. Deliberate Indifference

Liberally construes, Plaintiff alleges that Defendants acted with deliberate indifference to his health by: (1) only allowing him cold water on two occasions during two three-day periods of extreme heat; (2) denying him food, showers or medicine on occasion; and (3) refusing Plaintiff a medical lay-in to fix his glasses

---

[3] Should facts come to light as this case proceeds that another prison official at the McConnell Unit is the best person to implement Plaintiff's requested injunctive relief, the undersigned will substitute that person in place of Assistant Warden Furr.

11 / 19

"The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)). Prison officials are required to provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

A constitutional violation under the Eighth Amendment occurs only when two requirements are met. "First, there is an objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). To prove a constitutional violation, an inmate need not show that a death or serious injury already has occurred, but rather that there is a "substantial risk of serious harm." *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (citing *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)).

"Second, under a subjective standard, [the court] must determine whether the prison official responsible was deliberately indifferent to inmate health and safety." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). Deliberate indifference

12 / 19

is more than mere negligence. *Farmer*, 511 U.S. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837.

Taken as true, Plaintiff's allegations fail to state a claim of deliberate indifference. With regard to his claim of limited access to cold water, Plaintiff alleges no facts to suggest he was placed in a substantial risk of serious harm. His allegations further fail to suggest that he was denied any water to drink or that he was continuously subjected to extreme heat conditions during the relevant time frames. While he suffers from a seizure disorder, Plaintiff offers no allegations that he suffered a seizure or other serious issue as a result of having limited access to cold water for a temporary period of time.

Plaintiff further alleges instances where he was occasionally denied food, showers, and medicine for his diabetic condition. Plaintiff again alleges no facts to suggest that these occasional deprivations placed him in substantial risk of serious harm or that he otherwise suffered any injuries. *See Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (holding that prisoner's claim asserting he had missed eight meals over a seven-month period failed to state an Eighth Amendment claim); *Evans v. Santos*, No. 4:15-CV-72, 2017 WL 590301, at *8 (N.D. Miss. Feb. 14, 2017) (recognizing that prisoner's occasional failure to receive doses of medicine does not, without more, establish deliberate indifference); *Curry v. Byrd*, No. 5:13-CV-196, 2016 WL 1068858, at *3 (S.D.

Miss. Jan. 28, 2016) (concluding that the "intermittent interference with an inmate's . . . ability to take a shower does not demonstrate" deliberate indifference).

Lastly, the undersigned considers Plaintiff's claim that he was denied a medical lay-in which resulted in a nine-month delay in Plaintiff having his glasses fixed. The denial of eyeglasses by prison officials can, under some circumstances, cause serious harm to a prisoner and constitute an Eighth Amendment violation. *See Newman v. Alabama*, 503 F.2d 1320, 1331 (5th Cir. 1974). *See also Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d. Cir. 1996) (holding that the denial of prescription eyeglasses to an inmate suffering double vision and loss of depth perception due to head injury may constitute deliberate indifference); *Avila v. Landgrebe*, No. H-12-2315, 2013 WL 1336586, at *6 (S.D. Tex. Mar. 29, 2013) ("Glasses are necessary and must be issued when an inmate is blind and unable to function without them.").

The failure to issue glasses, however, does not support a deliberate indifference claim "where there is no showing of substantial harm or that the defendants were subjectively aware of the inmate's need." *Avila*, 2013 WL 1336586, at *6 (citing *Thomas v. Owens*, 345 F. App'x 892, 896 (5th Cir. 2009)). "The fact that an inmate cannot see without his glasses is not sufficient without a showing that he would suffer harm without them." *Id.* While alleging he suffered from headaches without his glasses, Plaintiff offers no facts to suggest a showing of substantial harm to the extent that he suffered from an extensive loss of vision or some other infirmity which rendered him unable to function without glasses. Furthermore, he alleges no facts to suggest that either Sergeant Muro or Officer Gutierrez was aware of Plaintiff's need for eyeglasses.

Accordingly, it is respectfully recommended that Plaintiff's deliberate indifference claims be dismissed with prejudice for failure to state a claim and/or as frivolous.

### C. Denial of Access to Courts

Plaintiff claims that Sergeant Muro's actions denied him access to the courts. Prisoners have a constitutionally-protected right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). The right of access to the courts is a limited one and "encompasses only a reasonable opportunity for inmates to file nonfrivolous claims challenging their convictions or conditions of confinement." *Sanchez v. Davis*, No. H-17-3335, 2017 WL 6547907, at *2 (S.D. Tex. Dec. 20, 2017) (citing *Jones*, 188 F.3d at 325).

Because the right of access to courts is not a "freestanding right," to state a cognizable First Amendment claim, the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts. *Lewis,* 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999). Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. *Lewis*, 518 U.S. at 349. Thus, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *See Lewis*, 518 U.S. at 356.

Plaintiff alleges that Sergeant Muro: (1) went into Plaintiff's cell and threw away copies of Plaintiff's exhibits and witness affidavits that incriminated Sergeant Muro and other defendants; (2) caused damage to Plaintiff's typewriter; and (3) denied Plaintiff two scheduled legal visits. According to Plaintiff, Sergeant Muro's actions in

confiscating cases brought in the past by inmates against Sergeant Muro prevented Plaintiff from using them in state court.

Taken as true, Plaintiff's allegations fail to state a First Amendment claim for denial of access to the courts. While referring to a state court action, Plaintiff fails to identify any non-frivolous claims which he was prevented from raising in state court. He further fails to identify non-frivolous claims that were lost which relate either to his conviction or conditions of confinement. His conclusory allegations indicating that the legal materials were vital to his success in his state court case fail to allege an actual injury supporting a denial-of-access-to-courts claim.

Furthermore, Plaintiff's ability to file the instant typewritten complaint and several other typewritten civil actions in this court belies any claim that he has been denied access to the courts due to any damage to his typewriter. Accordingly, the undersigned respectfully recommends that Plaintiff's First Amendment claims against Sergeant Muro for denial of access to the courts be dismissed as frivolous and/or for failure to state a claim for relief.

### D. Due Process

Liberally construed, Plaintiff claims that his due process rights were violated when CCM Inmon and Major Thompson denied him an upgrade in his custody classification status from G4 to G2, despite the recommendations of TDCJ and Huntsville staff for the upgrade. It is well settled, however, that a prisoner has no liberty interest in his custodial level or classification unless he can demonstrate that it imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

16 / 19

*Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Taken as true, Plaintiff's allegations fail to state a due process claim as they fail to indicate that his current G4 classification has resulted in any atypical or significant hardships in relation to the ordinary incidents of prison life. *See Harper*, 174 F.3d at 719; *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998). *Compare Blair v. Davis*, No. 5:17-CV-276, 2018 WL 1083620, at *2 (N.D. Tex. Feb. 28, 2018) (holding that prisoner's G5 custody status and placement in restrictive housing with no windows and constant fluorescent lighting fails to meet the *Sandin* standard); *with Wilkinson v. Austin*, 545 U.S. 209, 214 (2005) (holding that prisoner's confinement in a super-max facility created a liberty interest in being free from such conditions where almost all human contact was prohibited, inmates were kept in single cells behind solid doors for 23 hours a day, lights remained on at all time, visitation was rare, and inmates were disqualified from parole consideration). Because Plaintiff's allegations fail to state a liberty interest, the undersigned respectfully recommends that Plaintiff's due process claim against Defendants be dismissed for failure to state a claim and/or as frivolous.

V.     **RECOMMENDATION**

For purposes of § 1915A, Plaintiff has stated sufficient facts that, if true, state a retaliation claim against **ASSISTANT WARDEN COREY FURR** in his official capacity for injunctive relief. Accordingly, it is respectfully recommended that this claim be **RETAINED.** The undersigned will order service as to **ASSISTANT WARDEN FURR** by separate order. It is respectfully recommended further that Plaintiff's

17 / 19

remaining claims against all Defendants be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted this 13th day of December 2018.

_____
Jason B. Libby
United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).