Case 2:18-cv-00333 Document 40 Filed on 07/31/19 in TXSD Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
July 31, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FRED HOFFMAN, III, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-333 |
| | § | |
| JAVIER MURO, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DENY ASSISTANT WARDEN COREY FURR'S MOTION TO DISMISS**

Plaintiff Fred Hoffman is an inmate appearing *pro se* and *in forma pauperis*. In this prisoner civil rights action filed pursuant to 42 U.S.C. § 1983, Plaintiff primarily claims that Defendants have engaged in a retaliatory campaign of harassment against him. Pending before the Court is a Motion to Dismiss filed by Assistant Warden Corey Furr. (D.E. 21). For the reasons stated herein, it is respectfully recommended that the Court **DENY** this motion.

**I.     JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II. BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID). Plaintiff's claims in this lawsuit occurred in connection with his current assignment to the McConnell Unit in Beeville, Texas.

On October 4, 2018, Plaintiff filed his original complaint, naming the following officials as defendants: (1) Sergeant Javier Muro; (2) Lieutenant Christi L. Garcia; (3) Sergeant Cinthia Guzman; (4) Veronica Inmon, Classification Case Manager (CCM) II; (5) Corey Furr, Assistant Warden; (6) Lieutenant John C. Gonzales; (7) Officer Sonia Gutierrez; and (8) Major James Thompson. Despite the various conclusory labels that Plaintiff has attached to his claims, he primarily claims that Defendants have engaged in a retaliatory campaign of harassment against him. Plaintiff further alleges that Defendants violated his constitutional rights in many other aspects. Plaintiff seeks declaratory and injunctive relief in which he generally requests the cessation of all unconstitutional or unlawful conduct committed by Defendants against him.

A *Spears*[1] hearing was held on October 30, 2018. On December 13, 2018, the undersigned issued a Memorandum and Recommendation (M&R), recommending that the Court: (1) retain Plaintiff's retaliation claim against Assistant Warden Furr in his official capacity for injunctive relief; and (2) dismiss Plaintiff's remaining claims against all Defendants for failure to state a claim and/or as frivolous. (D.E. 10). The

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

undersigned ordered service of Plaintiff's complaint on Assistant Warden Furr. (D.E. 9). On January 29, 2019, Assistant Warden Furr filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. 21). Plaintiff subsequently filed his response to Assistant Warden Furr's motion. (D.E. 31).

**III.    PLAINTIFF'S ALLEGATIONS**

The following representations relevant to Plaintiff's retaliation claim were made either in Plaintiff's original complaint (D.E. 1) or at the *Spears* hearing: Plaintiff is 42 years old. In May 2011, he entered into TDCJ custody and was initially housed at the Byrd Unit. Prior to his transfer into TDCJ custody, Plaintiff was housed in an Oklahoma federal prison pursuant to a conviction out of the Western District of Oklahoma. Plaintiff arrived at the McConnell Unit sometime later in May 2011.

Prior to his incarceration, Plaintiff was diagnosed with various chronic seizure disorders, diabetes, and Post-Traumatic Stress Disorder (PTSD). He receives medications for each of these conditions. Plaintiff, in prison litigation terms, is known as a writ writer. He routinely files lawsuits or otherwise assists other inmates in preparing and submitting grievances, civil rights actions, or habeas corpus actions.

For example, in June 2016, Sergeant Guzman caught a prisoner from Plaintiff's housing section masturbating. According to Plaintiff, Sergeant Guzman punished every prisoner in Plaintiff's housing section by only allowing them ice water on two occasions over a three-day period despite the extreme heat. Plaintiff drafted and submitted over thirty grievances against Sergeant Guzman on behalf of himself and other prisoners to complain about the limited access to cold water. The prisoners ultimately received full

access to cold water, and Sergeant Guzman was reportedly removed from Plaintiff's housing section.

Plaintiff alleges Sergeant Guzman told Plaintiff he had "rocked the boat" in helping other offenders file grievances and began to assist other named defendants in conducting a retaliatory campaign of harassment against Plaintiff. Plaintiff contends that Sergeant Guzman retaliated by initiating false disciplinary cases against Plaintiff and denying Plaintiff the ability to present evidence on his behalf at his disciplinary hearings.

Sergeant Muro, who replaced Sergeant Guzman in Plaintiff's housing section, is alleged to have retaliated against Plaintiff for filing grievances against Sergeant Guzman by also limiting Plaintiff and other inmates in his housing section access to cold water twice over another three-day period of extreme heat. Sergeant Guzman told Plaintiff not to mess around with his girlfriend, who happened to be Sergeant Cinthia Guzman. Nevertheless, Plaintiff assisted other prisoners in grieving this issue. Plaintiff alleges Sergeant Muro threatened Plaintiff with a disciplinary case for every grievance filed against him. Plaintiff persisted and assisted twenty prisoners in filing their grievances.

Plaintiff, who practices the Jewish faith, alleges Sergeant Muro retaliated by restraining Plaintiff's hands and forcibly moving Plaintiff to the barber shop where Sergeant Muro directed the prison barber to shave off Plaintiff's religious beard. Sergeant Muro reportedly told Plaintiff that he was "going to learn to shut [his] mouth."

Plaintiff further states that Sergeant Muro continued his retaliatory campaign of harassment as follows: (1) while Plaintiff was transported to the Beeville Hospital to be treated for a stroke, Sergeant Muro entered Plaintiff's cell and threw away copies of

Plaintiff's exhibits and witness affidavits that incriminated Sergeant Muro and other defendants; (2) Sergeant Muro caused damage to Plaintiff's typewriter; (3) Sergeant Muro denied Plaintiff a medical lay-in which resulted in a nine-month delay in Plaintiff having his glasses fixed; (4) on November 29, 2016, Sergeant Muro denied Plaintiff two scheduled legal visits, resulting in a denial of access to courts. According to Plaintiff, the exhibits confiscated consisted of cases brought in the past by inmates against Sergeant Muro. Sergeant Muro's actions prevented Plaintiff from using these exhibits against Sergeant Muro in state court.

With regard to Lt. Garcia, Plaintiff alleges that she participated in the retaliatory campaign of harassment against Plaintiff by: (1) refusing to investigate certain aspects of his ombudsman complaints against Sergeant Muro and other defendants; (2) bringing false disciplinary cases against Plaintiff; (3) improperly finding Plaintiff guilty in disciplinary cases where she had presided as the disciplinary hearing officer (DHO); and (4) denying Plaintiff a diabetic snack, a religious meal, and insulin.

Plaintiff alleges that CCM Inmon and Major Thompson, in their positions on the Unit Classification Committee (UCC), participated in the retaliatory campaign of harassment against Plaintiff by denying him an upgrade in his custody classification status from G4 to G2, despite the recommendations of TDCJ and Huntsville staff for the upgrade. During the hearing on Plaintiff's classification status, Plaintiff alleges CCM Inmon and Major Thompson harassed Plaintiff about his religious beard being too long and his filing of grievances.

Plaintiff claims that Assistant Warden Furr was placed on notice of the abusive and retaliatory behavior committed by other defendants through I-60 complaints, letters, his handling of numerous Step 1 grievances, and conversations with Plaintiff and his family. Plaintiff alleges Assistant Warden Furr participated in the retaliatory campaign of harassment against Plaintiff by: (1) taking no action to correct Defendants' behavior; (2) signing various Step 1 grievances without providing an answer; (3) failing to investigate the assault that occurred against Plaintiff based on the cutting of his beard; and (3) reducing the time Plaintiff could visit with his wife from four hours to two hours.

Plaintiff alleges that Lt. Gonzales was the ombudsman investigator in connection with a complaint lodged by Plaintiff's family over disciplinary cases brought against Plaintiff by Lt. Garcia. Plaintiff alleges Lt. Gonzales participated in the retaliatory campaign of harassment against Plaintiff by using his position as Ombudsman investigator to influence testimony against Plaintiff and in favor of Lt. Garcia, coerce new testimony, and threaten perjury charges against Plaintiff's witnesses.

Plaintiff further alleges Officer Gutierrez worked with Sergeant Muro and Guzman. Plaintiff maintains she participated in the retaliatory campaign of harassment against Plaintiff by: (1) refusing to allow Plaintiff showers and food; (2) denying Plaintiff a medical lay-in to get his glasses fixed, which caused him to have headaches for nine months until his glasses were fixed; and (3) stealing Plaintiff's property without providing him a property settlement.

## IV. LEGAL STANDARD

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "[A] plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554-55.

When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). A court ruling on a Rule 12(b)(6) motion may also consider matters of which the court takes proper judicial notice. *See Davis v. Bayless,* 70 F.3d 367, 372 n. 3 (5th Cir. 1995)

("Federal courts are permitted to refer to matters of public record when deciding a Rule 12(b)(6) motion to dismiss."); *Cinel v. Connick*, 15 F.3d 1338, 1343, n.6 (5th Cir. 1994) ("In deciding a 12(b)(b)(6) motion to dismiss, a court may permissibly refer to matters of public record.").

## V. DISCUSSION

### A. Exhaustion

Assistant Warden Furr moves to dismiss Plaintiff's retaliation claims against him for failure to exhaust his administrative remedies. (D.E. 21, pp. 3-4). The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Because exhaustion is an affirmative defense, inmates are not required to

plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 215 (2006).

The TDCJ provides a two-step procedure for presenting administrative grievances. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam). Step 1 requires the inmate to present an administrative grievance at his unit within fifteen days from the date of the complained-of incident. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The inmate should then receive a response from the unit official, and if unsatisfied with the response, the inmate has fifteen days to appeal by filing a Step 2 grievance, which is handled at the state level. *Id.* The Fifth Circuit requires that both steps be completed in order to file suit in federal court. *Id* at 515-16 ("[A] prisoner must pursue a grievance through both steps for it to be considered exhausted."). *See also Dillion v. Rogers,* 596 F.3d 260, 268 (5th Cir. 2010) ("under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly.").

In *Johnson*, the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies. The Fifth Circuit noted that one of the purposes of the exhaustion requirement is to give officials "time and opportunity to address complaints internally." *Johnson*, 385 F.3d at 517 (citations omitted). A grievance "should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id.* Further, the nature of the complaint will influence how much detail is necessary. *Id.* For example, a complaint about a correctional officer would identify a

specific person, whereas a complaint about a prison condition, such as vermin in a cell or that commissary costs are too high, might not identify any individual. *Id.*

Assistant Warden Furr contends in his Motion to Dismiss that none of Plaintiff's numerous grievances attached to his complaint properly exhaust his retaliation claims against Assistant Warden Furr. (D.E. 21, p. 4). Plaintiff responds that he has attached twenty-five grievances to his complaint which demonstrate that he has exhausted his retaliation claims. (D.E. 31, pp. 7-8). To the extent Assistant Warden Furr claims his retaliation claims were not exhausted with respect to him, Plaintiff contends that "his administrative remedies were rendered unavailable to him when he tried to file grievances on the WARDENS who answered the original grievances." (D.E. 31, p. 10).

In the October 13, 2018 M&R, the undersigned found that Plaintiff's allegations against several defendants stated retaliation claims as they suggested a pattern of retaliatory conduct. (D.E. 10, p. 10). Specifically, Plaintiff's allegations indicated that, following his filing of certain grievances, he was subjected to many adverse actions including the following: (1) the filing of false disciplinary cases by several defendants; (2) forcibly being restrained by Sergeant Muro so that his religious beard could be removed; (3) the denial of a medical lay-in by Sergeant Muro and Officer Gutierrez which caused a nine-month delay in fixing his glasses; (4) the confiscation of Plaintiff's legal materials and destruction of his typewriter by Sergeant Muro; (5) the denial of two scheduled legal visits by Sergeant Muro; (6) the refusal by Lt. Garcia to investigate Plaintiff's ombudsman complaint against Sergeant Muro; (7) improper findings of guilt by Lt. Garcia in disciplinary cases where she was the DHO; (8) interference by Lt.

Gonzalez in in connection with Plaintiff's ombudsman complaint against Lt. Garcia; (9) the failure of Assistant Warden Furr to take any action to correct the retaliatory conduct committed by other defendants; and (10) the occasional denial of food, showers, and medicine by Lt. Garcia and Officer Gutierrez.

A review of the numerous grievances attached to Plaintiff's complaint reveals that he complained about each and every alleged retaliatory act in both steps of the grievance process. (*See* D.E. 1-1, pp. 33-36, 38-41, 50-53, 56-59, 61-64, 66-69, 99-102, 112-15, 125-28; D.E. 1-2, pp. 25-28, 30-33, 36-41, 52-54, 59-62, 64-67, 72-75; D.E. 1-3, pp. 45-48, 57-60, 62-65, 83-86, 138-51, 170-73). Plaintiff's numerous grievances provided sufficient notice to prison officials to address the retaliation claims that now form the basis of this lawsuit. *Johnson*, 385 F.3d at 517. *See also Brown v. Sikes*, 212 F.3d 1205, 1210 (11th Cir. 2000) (explaining that all § 1997e(a) requires "is that the prisoner provide during the grievance procedure all of the information concerning his claims that he has or reasonably could obtain").

In the October 30, 2018, M&R, the undersigned allowed Plaintiff's retaliation claims to proceed against Assistant Warden Furr in his official capacity because he was the named defendant in the best position to implement Plaintiff's requested injunctive relief. As Plaintiff has successfully exhausted his retaliation claims, the undersigned respectfully recommends that Assistant Warden Furr's Motion to Dismiss for failure to exhaust administrative remedies (D.E. 21) be denied.

### B. Injunctive Relief

The Eleventh Amendment does not bar a plaintiff's claim for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123 (1908) (establishing exception to Eleventh Amendment immunity in cases where the alleged constitutional violation is caused by a state official's actions or refusal to act within the authority of his or her office). *See also Cantu Servs., Inc. v. Roberie*, 535 F. App'x 342, 344–45 (5th Cir. 2013) (recognizing that, in order to avoid an Eleventh Amendment bar of a claim raised against a state official in his official capacity, the complaint must allege an ongoing violation of federal law and seek prospective injunctive relief).

While not directly challenging whether Plaintiff seeks prospective injunctive relief for his retaliation claims, Assistant Warden Furr contends that Plaintiff cannot satisfy the elements for a preliminary injunction. (D.E. 21, p. 5). Plaintiff, however, is seeking a permanent injunction as to his claims and not a preliminary injunction at this time. "For a permanent injunction to issue the plaintiff must prevail on the merits of his claim and establish that the equitable relief is appropriate in all other respects." *Watson v. Quarterman*, No. H-06-3260, 2008 WL 552447, at *4 (S.D. Tex. Feb. 27, 2008). As recommended by the undersigned in the October 31, 2018 M&R, Plaintiff has stated plausible retaliation claims against Assistant Warden Furr in his official capacity for injunctive relief at this early stage in the proceeding. Plaintiff, therefore, should have the opportunity to engage in discovery and prove both his claims and entitlement to the prospective injunctive relief requested.

Assistant Warden Furr further contends that Plaintiff's request for injunctive relief is moot with respect to him because he is no longer employed at the McConnell Unit. (D.E. 21, pp. 6-7). As noted above, the undersigned concluded in the October 31, 2018 M&R that Assistant Warden Furr was the individual most likely to fashion the injunctive relief Plaintiff seeks. (D.E. 10, p. 10). His current employment, however, with a different prison means that Assistant Warden Furr now lacks the authority to effectuate any injunctive relief on behalf of Plaintiff. *See Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) (explaining that plaintiffs "have no case or controversy" with defendants who have no power to redress the injuries alleged).

Rather than dismiss this case, the undersigned finds it appropriate to substitute Warden Phillip Sifuentes, as the individual in charge of the McConnell Unit and capable of providing the requested injunctive relief, in place of Assistant Warden Furr. Accordingly, it is respectfully recommended that Assistant Warden Furr's Motion to Dismiss (D.E. 21) be denied with respect to his contention that Plaintiff is not entitled to injunctive relief. As set forth in a separate order, the undersigned will order Warden Sifuentes to be substituted in place of Assistant Warden Furr and for service to be effectuated on Warden Sifuentes.

### C.  *Res Judicata* and Collateral Estoppel

Assistant Warden Furr asserts that Plaintiff's retaliation claims are barred by the doctrines of *res judicata* and collateral estoppel. (D.E. 21, pp. 7-8). The Full Faith and Credit Clause of the United States Constitution and its implementing statute, 28 U.S.C. § 1738, govern the preclusive effect of a state-court judgment in a subsequent federal

action. Final judgments of state courts "have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." *Id.* Under Full Faith and Credit, "[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.

For claim preclusion (*res judicata*) or issue preclusion (collateral estoppel) purposes, in other words, "the judgment of the rendering State gains nationwide force." *Baker v. General Motors Corp.,* 522 U.S. 222, 233 (1998) (footnote and citations omitted). This Court applies Texas preclusion law to determine the effect of the state court's dismissal order. 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984); *see also Norris v. Hearst Trust,* 500 F.3d 454, 460–61 (5th Cir. 2007).

The Texas rule on claim preclusion requires: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Norris,* 500 F.3d at 461 (quoting *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 652 (Tex. 1996)). If these elements are satisfied, "[r]es judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action." *Amstadt,* 919 S.W.2d at 652.

Texas law further provides that "the party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *McCoy v. Hernandez*, 203 F.3d 371, 374 (5th Cir. 2000). Due process requires an identity of the parties in the two actions at issue, or, alternatively, that "the party against whom the doctrine is asserted [i]s a party or in privity with a party in the first action." *Id.* With respect to collateral estoppel, parties are in privity "when: (1) they control an action even if they are not parties to it; (2) their interests are represented by a party to the action; or (3) they are successors in interest, deriving their claims through a party to the prior action." *Id.*

Assistant Warden Furr contends that Plaintiff's retaliation claims have been litigated to a final disposition against Plaintiff in state court. (D.E. 21, p. 8). Without attaching any decisions to his motion, Assistant Warden Furr cites to the following four state court actions filed by Plaintiff in Bee County: (1) Case No. B-18-1114-cv-B (156th District, Bee County, Texas (March 2018)); (2) Case No. B-17-1659-cv-A (36th District, Bee County, Texas (December 2017)); (3) Case No. B-18-cv-1058-C (343rd District, Bee County, Texas (February 2018)); and (4) Case No. B-17-1097-cv-C (343rd District, Bee County, Texas (February 2018)). According to Assistant Warden Furr, two of these cases were dismissed in state court based on some of the same allegations raised in this case. (D.E. 21, p. 8).

Plaintiff responds that none of his claims are barred by *res judicata* and collateral estoppel as they have not been litigated to a full disposition on the merits in state court and did not contain identity of parties in many of the lawsuits identified by Assistant Warden Furr. (D.E. 31, pp. 15-20). He contends that "this case and the cases in state court have different operative facts, different causes of action, different grounds for recovery, and different grievances and exhibits." (D.E. 31, p. 16).

Plaintiff has attached several state court pleadings and orders to his response, which are part of the state court's public record. (D.E. 31-2). The undersigned takes judicial notice of the following public documents submitted by Plaintiff: (1) July 14, 2017 Final Judgment issued by the Bee County District Court in *Hoffman v. Muro, et al.*, No. B-17-1009-CV-B (156th District, Bee County, Texas (July 2017)); (2) Plaintiff's original complaint filed in *Hoffman v. Muro, et al.*, No. B-17-1610-CV-C (156th District, Bee County, Texas (July 2017)); (3) February 26, 2018 Final Judgment issued by the Bee County District Court in *Hoffman v. Muro, et al.*, No. B-17-1610-CV-C (343rd District, Bee County, Texas (February 2018)); (4) April 16, 2018 Order to Reinstate Case by the by the Bee County District Court in Case No. B-17-1610-CV-C; (5) May 25, 2018 Order of Dismissal issued by the Bee County District Court in Case No. B-17-1610-CV-C; and (6) Plaintiff's original complaint filed in *Hoffman v. Muro, et al.*, No. B-18-1114-CV-B (156th District, Bee County, Texas (March 2018)). (*See* D.E. 31-2)

In Case No. B-17-1610-CV-C, Plaintiff claimed, *inter alia*, that Defendant Muro had retaliated against him for filing grievances and lawsuits by destroying his typewriter, causing Plaintiff's ID card to be lost, causing Plaintiff's stamps to be lost or destroyed,

and ensuing that multiple prepared motions and exhibits for previous litigation against Defendant Muro were destroyed or lost. (D.E. 31-2, pp. 11-13). The Bee County District Court ultimately dismissed Plaintiff's complaint in Case No. B-17-1610-CV-C for failure to comply in general with Chapter 14 of the Texas Civil Practices and Remedies Code. (D.E. 31-2, p. 27).

In Case No. B-18-1114-CV-B, Plaintiff claimed, *inter alia*, that Defendants Muro and Gutierrez had retaliated against him for filing grievances by confiscating his legal materials and personal. (D.E. 31-2, pp. 40-41). While Assistant Warden Furr indicates that this case was dismissed with prejudice, Plaintiff states that it remains pending. (D.E. 21, p. 8; D.E. 31, p. 19). Neither party has submitted a final order or judgment from the Bee County District Court dismissing this case.

Assistant Warden Furr cites to a Texas appellate decision addressing Plaintiff's claim that his beard was forcibly shaved in retaliation for Plaintiff's use of the grievance system. *Hoffman v. Muro, et al.*, No. 13-17-00416-CV, 2018 WL 2979958 (Tex. App. – Corpus Christi June 14, 2018). In that action, the Bee County District Court dismissed Plaintiff's retaliation claim against Defendant Muro as frivolous or malicious under § 14.003(a) of the Texas Civil Practices and Remedies Code. *Id.* at *1. The Texas appellate court affirmed, concluding that Plaintiff's retaliation claim against Defendant Muro had no arguable basis in law or fact. *Id.* at *2.

In all of the state court cases cited by Assistant Warden Furr, Plaintiff asserted isolated instances of retaliatory conduct by prison officials at the McConnell Unit. The public records submitted by Plaintiff show that these isolated instances of retaliatory

17 / 20

conduct were addressed on the merits in Case No. B-17-1610-CV-C and the Texas appellate court in *Hoffman v. Muro*. While stating in his state court complaints that he had been subjected to a general campaign of harassment, Plaintiff did not articulate all of the same instances of retaliatory conduct in those actions against the same defendants sued in this federal civil rights action. Indeed, Plaintiff claims in this action that Defendants engaged in a comprehensive retaliatory campaign of harassment against him, and he lists several instances describing the campaign of retaliatory conduct.

As noted in the undersigned's October 31, 2018 M&R, the prison officials' acts of retaliation by themselves do not constitute constitutional violations but do potentially demonstrate a chronology of events from which retaliation may plausibly be inferred. (D.E. 10, pp. 10-11). Plaintiff's retaliation claims in this action consist of a wide variety of alleged retaliatory conduct spread over two-year period ending just before Plaintiff filed this action. Because Plaintiff has not brought his claims based on a retaliatory campaign of harassment against the same defendants in any one state court action, the undersigned finds that such claims are not barred by either *res judicata* or collateral estoppel. *See Norris,* 500 F.3d at 461; *McCoy*, 203 F.3d at 374. Accordingly, it is respectfully recommended that Assistant Warden Furr's Motion to Dismiss (D.E. 21) be denied as to whether Plaintiff's retaliation claims are barred by *res judicata* or collateral estoppel.

## VI. RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Assistant Warden Furr's Motion to Dismiss (D.E. 21) be **DENIED** in all respects. In a separate order, the

undersigned will direct that Warden Phillip Sifuentes be substituted on behalf of Assistant Warden Furr and that service be effectuated on Warden Sifuentes.

Respectfully this 31st day of July 2019.

*Jason Libby*
Jason B. Libby
United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).