United States Courts
Southern District of Texas
FILED

MAY 17 2021

Nathan Ochsner, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

FRED HOFFMAN, III,          §
   Plaintiff,              §
v.                          §        CIVIL ACTION NO. 2:18-CV-333
                            §
JEFFERY RICHARDSON, et al., §
   Defendants.             §

---

## PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT RICHARDSON'S MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT

---

TO THE UNITED STATES JUDGES OF SAID COURT:

Comes now, FRED HOFFMAN, III, TDCJ# 1662898, the Plaintiff and asks the Court to deny Defendant's Motion for Final Summary Judgment, and allow the Plaintiff's valid claims to continue to a jury trial. In support the Plaintiff submits the following to this Honorable Court:

### I. LIBERAL CONSTRUCTION RULE

1.  Pro Se litigant pleadings are to be construed liberally and held to less stringent standards, opposed to formal pleadings that are filed by attorneys. This Court should liberally construe the pleadings by PRO SE litigants despite their failure to cite the proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigants unfamiliarity with the pleading requirements. SEE: HAINES v. KERNER, 404 US 519, 30 L.Ed.2d 652, 92 S. Ct. 594 (1972).

### II. INTRODUCTION & STATEMENT OF THE CASE

2.  Plaintiff Fred Hoffman III ("Plaintiff") is an offender confined to the custody of the Texas Department of Criminal Justice ("TDCJ"). At the time the suit was filed the Plaintiff lived on the McConnell Unit in Beeville, Texas. DE No. 9-1 at 3. The Plaintiff currently lives on the Bill Clements Unit in Amarillo, Texas, in Potter County. The Plaintiff was proceeding PRO SE and

PAGE 1

INFORMA PAUPERIS and brought this suit for multiple claims, of which all of were pursuant to 42 U.S.C. § 1983.

3. This suit was filed for the "Defendants created an environment to ensure a Campaign of Harassment was allowed to be carried out un-impeded by unit staff." DE No. 01, pp. 8, No. 32.

4. It also identified that the "Campaign of Harassment consisted of, but is not limited to the following: harassment over my religious beard, harassment for my redressing grievances, filing false disciplinary cases, ordering other unit staff to write more false disciplinary cases, treatment that was unjust-ifiably humiliating, frightening, degrading and anti-ethical to human dignity in regards to the assault & battery, legal papers were confiscated and/or destroyed which impaired the Plaintiff's ability to present his case effect-ively in State court and was both interference and denial of access to courts, the intentional destruction of Plaintiff's typewriter in an effort to frustrate, forestall, impede and curtial my access to the courts." DE No. 01, pp. 8-9, No. 33.

5. The Original complaint goes on to detail out the action of a "Ongoing Cam-paign of Harassment," that the Plaintiff has been subjected to over a course of years. In the relief requested the Plaintiff asked for: "The immediate cessation of all acts involved in Campaign of Harassment led by the Defendants." DE No.1, pp. 24, No. 45.

6. The complaint goes onto to detail out: "The amount of evidence dispels any type of suggestion that Plaintiff's plight arose from a single instance of type of negligence or ineptitude, rather, Plaintiff is challenging a pattern of con-duct, that simply amounts to a policy, whereby prison officials have conscious-ly ignored the ongoing Campaign of Harassment against the Plaintiff, for years." DE No. 01, pp. 27, No. 65.

07.  The Plaintiff well pled a case showing a ongoing **"Campaign of Harassment"**, which was the product of retaliation, because of the Plaintiff's continued use of redressing his grievances in TDCJ's grievance system & the courts, and his contacting the press for a public purpose. The Plaintiff was subject to the adverse actions that included, but are not limited to the following list:

a) the filing of false disciplinary cases;

b) the filing of retalitory disciplinary cases;

c) forcibly being restrained so that Plaintiff's beard could be removed;

d) the denial of a medical lay-in, which caused a delay in fixing glasses;

e) the confiscation and/or destruction of legal materials;

f) the confiscation and/or destruction of legal books;

g) the denial of scheduled legal visits;

h) refusal to investigate ombudsman complaints;

i) improper findings of guilt in disciplinary cases;

j) interference with witnesses in an ombudsman complaint;

k) the failure of Wardens to take any action to correct the retalitory conduct committed by unit staff; and

l) the occassional denial of food, showers, and medicine.

SEE also: DE No's 10, 20, 40, 70, and 82, for examples/descriptions of conduct.

08.  This Honorable Court, after review of the Complaint & a Spears Hearing, issued an ORDER that detailed out the removal of the original defendants, in place of a single defendant (a ML Warden), because he would fashion the injunctive relief requested, if required. **"Plaintiff seeks injunctive relief with respect to his allegations of a retalitory campaign of harassment. Plaintiff names eight defendants in his original complaint, but none of the named defendants singularly orchestrated the retaliation or participated in all of the incidents."** DE No. 10, pp. 11, paragraph 2.

PAGE 3

09.  On January 29, 2019, the Defendant filed his Motion to Dismiss Pursuant to Rule 12(b)(6), DE No. 21, to which the Plaintiff filed his Memorandum and Objections Response in Opposition to the Motion to Dismiss, DE No. 31.

10.  On July 29, 2019, this Court issued its Memorandum and Recommendation to Deny Defendant's Motion to Dismiss, DE No. 40, in which WARDEN COREY FURR was replaced with WARDEN PHILLIP SIFUENTES, as the best person to effectuate relief if granted. DE No. 41.

11.  On September 23, 2019, the Defendant filed his Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6), DE No. 50, to which the Plaintiff filed his Memorandum and Objections Response in Oppostion to the Motion to Dismiss, DE No. 70, on December 13, 2019.

12.  On September 23, 2019, the Defendant also filed his Motion to Substitute Defendant Richardson for Defendant Phillip Sifuentes, after Sifuentes was moved to the Connelly Unit and could no longer effectuate injunctive relief, DE No. 50, which the Court granted on September 24, 2019, in DE No. 52.

13.  On August 05, 2020, this Court issued its Memorandum and Recommendation to Deny Defendant's Motion to Dismiss, DE No. 82.

14.  On September 11, 2020, the Defendant filed his Answer to the Complaint with Jury Demand. DE No. 85.

15.  On February 12, 2021, the Plaintiff filed his Emergency Motion for a TRO & Preliminary Injunction for Plaintiff to be returned to the McConnell Unit and not be subject to further Transfers to other TDCJ-CID Units, with EXHIBITS, after being subject to a retalitory transfer to a far more violent prison, the Bill Clements Unit. DE No. 91, & 91-1, 91-2, and 91-3.

16.  On February 15, 2021, the Defendant filed his Motion for Summary Judgment to Dismiss Plaintiff's claim as Moot, with EXHIBIT A. DE No. 93 & 93-1.

17.  On March 3, 2021, the Plaintiff mailed his Emergency Amended & Supplemented Motion for a TRO & Preliminary Injunction for Plaintiff to be returned to the McConnell Unit and not be subject to further transfers to other TDCJ-CID units, which was filed into the record on March 12, 2021. **DE No. 102.**

18.  On March 4, 2021, the Plaintiff mailed his Motion for TDCJ's Director Lori Davis to replace ML Head Warden Jeffery Richardson in this suit for the purpose of being to provide actual Injuctive relief.

19.  On March 5, 2021, the Defendant filed his Response in Opposition to the Motion for a TRO & Preliminary Injunction (DE No. 91). **DE No. 100.**

20.  On March 5, 2021, the Plaintiff mailed his Motion to Amend & Supplement his Original Complaint, to add a Defendant to the case, who orchestrated the ongoing Campaign of Harassment, and another that will be for the purposes of effecting actual injunctive relief.

21.  On March 18, 2021, the Plaintiff mailed his Supplemented Exhibits to DE No. 102, which  is also to Amend DE No's 91-1, 91-2, & 91-3, with EXHIBITS A-FF, that is also being used as EXHIBITS for the Plaintiff's Response in Opposition to the Motion for Summary Judgment, which was filed into the record on April 6, 2021. **DE No. 111 & DE No's 111-1, 111-2, 111-3, 111-4, and 111-5.**

22.  On March 21, 2021, the Plaintiff mailed his Notice to the Court of his Due Diligence and his Use of Public domain records, with his Motion to Amend and Supplement DE No's 91, 91-1, 91-2 & 91-3, with DE No. 102 and Supplemental Exhibits named in the attached Appendix & identified as EXHIBITS A-14, which  was filed into the record on April 9, 2021. **DE No. 112.**

23.  On April 10, 2021, the Plaintiff mailed his Motion for In Camera Inspection of the Supplemental Exhibits 01-14, Motion to Seal Supplemental Exhibits 01-14, and Supplemental Sealed Exhibits 01-14.

24.  On April 11, 2021, the Plaintiff mailed his Motion to Joinder BC Head Warden Adam Gonzalez as a Defendant to this Suit.

25.  On April 22, 2021, the Defendant filed his Response in Opposition to the Plaintiff's DE No. 113, to have Director Lori Davis replace Jeffery Richardson. DE No. 114.

26.  On April 30, 2021, the Plaintiff mailed hit Notice to the Court & Defendant, and his Supplemental Exhibits GG-ZZ, that supplement DE No's 111-1 thru 111-5.

27.  The Plaintiff has now provided notice of the following adverse actions, that are not limited to the list below, being committed against him at the BC:

   a) the filing of false disciplinary cases;

   b) the filing of retalitory disciplinary cases;

   c) exposure & directly shining of strobe-capable falshlights into his face;

   d) exposure to beams from regular flashlights into his face daily;

   e) being placed in a cell that is illuminated 24 hours day, with repeated turning off & on of cell lights daily;

   f) the denial of a medical lay-in for an eye-exam for new glasses, since mine are six years old, and am denied the exam for months now;

   g) the confiscation and/or destruction of legal materials;

   h) the confiscation and/or destruction of legal books;

   i) the denial of an attorney-client call, prior to hearing on 3/3/21;

   j) the denial of all legal mail for weeks, prior to hearing on 3/3/21;

   k) repeated delays in sending and receiving of legal mail;

   l) refusal to investigate ombudsman complaints;

   m) the failure of Wardens to take any action to correct the retalitory conduct committed by unit staff;

   n) officer directing beam purposely into his eyes, in retaliation for reporting staff misconduct (recorded on BC TLV cameras); and

   o) the occassional denial of hot food, healthy food, food itself, and medicine.

### III. PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

28.  Although summary judgment is proper in a case in which there is no genuine dispute of material fact, this is not a case in which the Court should grant summary judgment. TOLAN v. COTTON, ___ U.S. ___, 134 S. Ct. 1861, 1866 (2014); SEE FED. R. CIV. P. 56(a); CELOTEX v. CATRETT, 477 U.S. 317, 322 (1986).

29.  A defendant moving for summary judgment on a plaintiff's claim must demonstrate the absence of a genuine dispute of material fact by either (1) submitting summary-judgment evidence that negates the existence of a material element of the plaintiff's claim or (2) showing there is no evidence to support an essential element of the plaintiff's claim. SEE: CELOTEX CORP., 477 U.S. at 322-23; J. GEILS BAND EMP. BENEFIT PLAN v. SMITH BARNEY SHEARSON, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996).

30.  Defendant cannot rely on conclusory statements to establish that plaintiff has not presented evidence on an essential element of his claim. Rather, the defendant must demonstrate the absence of a genuine factual dispute. SEE: CELOTEX CORP., 477 U.S. at 324-25. Only if the Defendant meets his burden is the plaintiff required to respond by summary-judgment proof to show a genuine dispute of material fact. SEE: FED. R. CIV. P. 56(e)(3).

31.  In determining whether there is a genuine dispute of material fact that prevents summary judgment, a court must consider all evidence in the light most favorable to the plaintiff as the nonmovant. TOLAN, ___ U.S. ___, 134 S. Ct. at 1866; GARCIA v. PUEBLO COUNTRY CLUB, 299 F.3d 1233, 1236-37 (10th Cir. 2002). The Court must also resolve all reasonable doubts about the facts in favor of the plaintiff as the nonmovant. TOLAN, ___ U.S. at ___, 134 S. Ct. at 1866; and COOPER TIRE & RUBBER CO. v. FARESE, 423 F.3d 446, 455-56 (5th Cir. 2005).

32.  The Plaintiff has proven and will prove further the elements to support a claim for that the Defendants engaged in a ongoing Campaign of Harassment

against him, that was retalitory by design. This includes the acts described in the course of this suit, acts committed by the two officers that orchestrated the ongoing campaign of harassment, and the retalitory transfer of the Plaintiff, to a far more violent prison, in an effort to deter him from continuing to exercise his rights.

33. Retaliation is not expressly referred to in the Constitution, however, it is nonetheless actionable because retalitory actions may tend to chill an individual's exercise of constitutional rights. SEE: PERRY v. SINDERMAN, 408 U.S. 593, 597 (1972).

34. Because there is a genuine dispute of material fact of the elements that are challenged by the Defendant in his Motion for Summary Judgment, the Defendant is not entitled to summary judgment in this case, and the case is not moot.

35. The motions, documentary evidence, and affidavits of the Plaintiff and the Defendant are squarely contradictory as to the following genuine factual disputes and much more:

(1) There is no competent summary judgment evidence provided by the Defendants, that proves the move of the Plaintiff was done for true actual medical reasons, that the BC Unit is truly the best place for the Plaintiff, that the screenshots of the TDCJ mainframe are a true representation of the Plaintiff's status & classification, that the Defendant was truly not involved in some fashion with the transfer, and that the move was truly not done in retaliation, after using information obtained in a breach of attorney-client privilege for strategic gain.

(2) DAVID BLACKWELL has no personal knowledge of Plaintiff's medical records, so he cannot testify to the fact that a medical provider supposedly had a heat sensitivity score assigned to the Plaintiff for the move, as he has no way to prove such, as his evidence is mere screenshots of TDCJ's mainframe that could have the data he is testifying to entered by anyone, and not a medical provider.

(3) DAVID BLACKWELL has no personal knowledge of the McConnell Unit's use of Administrative Segregation housing, as his affidavit is incorrect,

PAGE 8

he has no idea how the housing is being used on the ML Unit, and he fails to admit that or identify that the Plaintiff is now housed in an even higher security rated building than Ad-Seg.

(4) The Defendant's only exhibit in support of his motion, does not prove anything about how the Defendant might or might not have influenced the decision, for the mainframe to display the reasons for the move.

(5) That the agents of the Defendant were the true staff members that did orchestrate the ongoing Campaign of Harassment from the beginning.

(6) That the offending behavior cannot be repeated, even when Plaintiff is living on the BC Unit, after the retalitory transfer;

(7) That the potential for future violations gives rise to a disputed question of fact in this case, since the retaliation & adverse conduct still continues on the BC Unit; and,

(8) Defendants willingly, knowingly, and intentionally caused these deprivations that violated the Plaintiff's constitutional rights.

36.   These above genuine factual disputes also caused the harms below, by the retalitory transfer to a far more dangerous prison, and they are continuous & expanding as well, from the original acts of retaliation in the ongoing campaign of harassment:

(a) the filing of false disciplinary cases on the BC Unit;

(b) the filing of retalitory disciplinary cases on the BC Unit;

(c) exposure & directly shining of strobe-capable flashlights into his face;

(d) exposure to beams from regular flashlights into his face daily;

(e) being placed in a cell that is illuminated 24 hours a day, with repeated turning off and on of cell lights daily;

(f) the denial of a medical lay-in for an eye-exam for new glasses, since Plaintiff's are six years old, and am denied the exam for months now;

(g) the confiscation and/or destruction of legal materials;

(h) the confiscation and/or destruction of legal books;

(i) the denial of an attorney-client call, prior to hearing on 3/3/21;

j) the denial of all legal mail for weeks, prior to hearing on 3/3/21;

k) repeated delays in sending and receiving of legal mail;

l) refusal to investigate ombudsman complaints;

m) the failure of Wardens to take any action to correct the retalitory conduct of unit staff;

n) officer directing beam of strobe-capable flashlight purposely into the eyes of the Plaintiff, while he gave a statement about staff misconduct to another officer, trying to purposely induce a seizure in the Plaintiff as a form of punishment for his redressing his grievances; and

o) the occassional denial of hot food, healthy food, food itself, and medicine.

There are genuine issues of fact, clearly at bar here.

37.  The factual dispute is also material. Under the governing law, whether the actions of the Defendants violates the U.S. Constitution and is an act of actual retaliation depends on the Plaintiff proving that the Defendants are not unduly discouraging the Plaintiff from exercising his constitutional rights.

38.  Retaliation is actionable "only if the retalitory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" BIBBS v. EARLY, 541 F.3d 267, 270 (5th Cir. 2008)(quoting MORRIS v. POWELL, 449 F.3d 682, 684 (5th Cir. 2006)).

39.  The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. MORRIS, 449 F.3d at 686. Thus, "[a] prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." WOODS v. SMITH, 60 F.3d 1161, 1164 (5th Cir. 1995). "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against the inmates for engagin in such protected activities." REESE v. SKINNER, 322 F.Appx

381, 383 (5th Cir. 2009)(citing MORRIS v. POWELL, 449 F.3d 682, 684 (5th Cir. 2006)).

40. To state a valid claim under § 1983 for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." JONES v. GRENINGER, 188 F.3d 322, 324-25 (5th Cir. 1999)(citing McDONALD v. STEWART, 132 F.3d 225, 231 (5th Cir. 1998).

41. An inmate must allege more than his personal belief that he is the victim of retaliation. JOHNSON v. RODRIGUEZ, 110 F.3d 299, 310 (5th Cir. 1997)(Citation omitted). "Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim." JONES, 188 F.3d at 325.

42. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. Id. In other words, a successful claim of retaliation requires a showing that, but for some retalitory motive, the complained of adverse incident would not have occurred. WOODS, 60 F.3d at 1166.

43. The Plaintiff alleges that the defendants & their agents participated in a ongoing retalitory campaign of harassment against him after he brought both grievances and ombudsman complaints on behalf of himself and other inmates against the defendants, litigated claims against the defendants, and for his contacting the press for a public purpose, which was published.

44. The Plaintiff alleges that the defendants & their agents subjected him to all the adverse treatement identified in (7), but is not limited to that, while on the McConnell Unit, and to all the adverse treatment identified in (27) and (36) while on the Bill Clements Unit, which are not listed again to limit redundancy.

45. Taken as true, Plaintiff's allegations state a retaliation claim as they

suggest a pattern of retalitory conduct. While the acts of retaliation by them-
selves do not constitute constitutional violations, they do demonstrate a full
chronology of events from which retaliation may plausibly be inferred.

46. Based on the evidence in this case the Plaintiff has clearly met all the
requirements as to the elements. A reasonable jury could find for the Plaintiff
based on the facts in the Plaintiff's declarations, documentary evidence, and
summary judgment must therefore be denied as the case is not moot. **SEE: ANDER-
SON v. LIBERTY LOBBY, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).**

47. In support of his Response to the Defendants' Motion for Summary Judgment,
the Plaintiff incorporates by reference all the previously filed exhibits and
verified filings, to include but not limited to EXHIBITS A-FF, mailed on the
18th of March, 2021, **(DE No. 111-1, 111-2, 111-3, 111-4, & 111-5)**, EXHIBITS
01-14, mailed on April 10, 2021, EXHIBITS GG-YY, mailed on April 30, 2021, and
has attached additionally as evidence:

EXHIBIT ZZ:     **Plaintiff's Declaration in Opposition to the...**     - 35 pages
EXHIBIT 15:     **Ombudsman complaint for falsified & retalitory..**     - 10 pages
EXHIBIT 16:     **Ombudsman complaint for confiscation legal material**- 12 pages

## IV. MATERIAL AND UNDISPUTED FACTS

48. The following facts are not in dispute or are not reasonably susceptible
to dispute. The Plaintiff concedes the facts stipulated by the Defendant for
the purposes of this Motion for Summary Judgment, are true and correct. Undis-
puted facts should not be considered admissions for the purposes of trial.

1. At all times relevant to Plaintiff's complaint, Defendant was employed by
   the Texas Department of Criminal Justice.

2. At all times relevant to Plaintiff's complaint, Plaintiff was an inmate in
   the custody of the Texas Department of Criminal Justice.

## V. LEGAL ISSUES AT BAR

49. To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed. An actual, live controversy must remain at all stages of federal court proceedings, both at the trial and appellate levels.

Is Hoffman's retaliation claims moot because Hoffman was moved from the McConnell Unit, to the Bill Clements Unit?

## VI. LEGAL ARGUMENT AND AUTHORITIES

A.    Hoffman's request for injunctive relief is not moot as controversy exists.

I.    Mootness Standards as applied to this case

50. A case is moot when the legal dispute between the plaintiff and the defendants has been resolved for practical purposes or has ceased to exist -- i.e., when there is no longer a "live" case or controversy. Mootness is established only if "(1) it can be said with assurance that 'there is no reasonable expectation...' that the alleged violation will reoccur... and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." SEE: COUNTY OF LOS ANGELES v. DAVIS, 440 U.S. 625, 631, 99 S.Ct. 1379 (1979)(citations ommitted); accord, PARENTS INVOLVED IN COMMUNITY SCHOOLS v. SEATTLE Sch. Dist. No. 1, 551 U.S. 701, 719, 127 S.Ct. 2738 (2007); HOLLAND v. NEW JERSEY DEP'T OF CORRECTIONS, 246 F.3d 267, 274 (3d Cir. 2001)("...[A] case is not moot, even if the applicant's primary injury is resolved, so long as the [appellant] continues to suffer some harm that a favorable court decision would remedy." (citation ommitted)).

51. If there is a concrete reason to believe the violation is likely to recur, the case is not moot. SEE: WASHINGTON v. HARPER, 494 U.S. 210, 218-19, 110 S.Ct. 1028 (1990)(holding that cessation of administering antipsychotic drugs to an inmate did not moot case since inmate was still suffering from mental illness).

52.  The party claiming mootness has the burden of showing that the case is
actually moot. SEE: FRIENDS OF THE EARTH, Inc. v. LAIDLAW ENVIRONMENTAL SERVICE
(TOC), Inc., 528 U.S. 167, 189, 120 S.Ct. 693 (2000)(referring to "heavy burden"
of establishing mootness); FIREFIGHTERS LOCAL 1784 v. STOTTS, 467 U.S. 561, 569,
570, 104 S. Ct. 2576 (1984). Yet, by the time mootness is an issue, abandonment
of the case may prove more wasteful than frugal. SEE: FRIENDS OF THE EARTH, 528
U.S. 167, 170.

53.  A case is moot when "it can be said with assurance that there is no reason-
able expectation that the alleged violation will recur, [and] interim relief or
events have completely and irrevocably eradicated the effects of the alleged
violation." ASSOCIATED GEN. CONTRACTORS OF CONN. v. CITY OF NEW HAVEN, 41 F.3d
62, 66-67 (2d Cir. 1994)(quoting COUNTY OF LOS ANGELES v. DAVIS, 440 U.S. 625,
631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)).

54.  Short-lived legal violations that are over with before they can be chall-
enged in court are not considered moot if they are "capable of repetition, yet
evading [judicial] review" and if there is a "reasonable liklihood" that they
will happen again to the same plaintiff. SEE: SPENCER v. KEMMA, 523 U.S. 1, 17-
18, S. Ct. 978 (1998)("The capable-of-repetition-doctrine applies only...[when]
... two circumstances [are] simultaneously present: (1) the challenged action
is in its duration too short to be fully litigated prior to cessation or the
expiration, and (2) there is a reasonable expectation that the same complaining
party [will] be subject to the same action again." (citations omitted); accord,
HONING v. DOE, 484 U.S. 305, 318, 108 S. Ct. 592 (1988).

55.  A challenge to a condition or practice at a particular prison or unit is
generally moot if the plaintiff is transferred, unless there is some factual
basis to expect the plaintiff to be subject to the same violation again. SEE:
DAVIS v. NEW YORK, 316 F.3d 93, 99 (2d Cir. 2002)(challenge to second-hand
smoke exposure was not mooted by transfer where plaintiff alleged his problem

persisted at the new prison), or the plaintiff has challenged a system-wide policy that will apply after transfer. SEE: LEHN v. HOLMES, 364 F.3d 862, 871-72 (7th Cir. 2004)(transferr of prisoner does not moot claim of exposure to environmental tobacco smoke where it results from a prison system-wide policy to house non-smoking with smoking prisoners).

56. Transfer or release will also not moot a claim or case if the action that the plaintiff has challenged has a continuing effect after the transfer or the release. SEE e.g., NELSON v. HEISS, 271 F.3d 891, 897 (9th Cir. 2001)(transfer mooted claim against officials at sending prison, but not claim against Director of prison system, for system-wide rule); RANDOLPH v. RODGERS, 170 F.3d 850, 856-57 (8th Cir. 1999)(inmate suing Missouri Department of Corrections and various officials for denying him sign-language interpreter at disciplinary hearings was entitled to injunction against MDOC despite his transfer to new facility during course of lawsuit; inmate remained under control of MDOC, which controlled both facilities and funding necessary to provide sign-language interpreter).

57. Also granting part of the relief sought does not moot the case, in this case the Defendant is seeking to moot the case, just because the Plaintiff is on a new unit with staff from the Bill Clements Unit, but the ongoing Campaign of Harassment continues at this unit, with no oversight, and Plaintiff's full claims remain a ongoing controversy. To identify this all one has to do is to compare (7) with (36). SEE e.g., GATES v. TOWERY, 430 F.3d 429, 432 (7th Cir. 2005)("To eliminate the controversy and make a suit moot, the defendant must satisfy the plaintiff's demands; only then does no dispute remain between the parties.").

58. Also in addition to that argument, reforms undertaken under pressure of litigation generally do not moot injunctive claims. SEE e.g., PARENTS INVOLVED

**PAGE 15**

IN COMMUNITY SCHOOLS v. SEATTLE SCH. DIST. No. 1, 551 U.S. 701, 719, 127 S.Ct. 2738 (2007)("Voluntary cessation does not moot a case or controversy unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur...'" (citations omitted)); SEE also: SUTTON v. RASHEED, 323 F.3d 236, 248 (3d Cir. 2003)(warning that where prison authorities have undertaken to voluntarily change a policy, "a claim will not be rendered moot if there remains the possibility that the plaintiffs will be disadvantaged in the same fundamental way." (internal quotation marks omitted)).

59. In addition, policy changes do not moot a case if they fail to address all aspects of the dispute between the parties, or if there is no assurance that they have eliminated or will eliminate the legal violations, SEE: GATES vs. COOK, 376 F.3d 323, 337, 342-43 (5th Cir. 2004)(officials' assurance that they would comply with certain standards did not moot a case where unlawful conditions were long-standing); accord, DAVIS, 316 F.3d at 99 (2d Cir. 2002); SEE also: SKINNER v. UPHOFF, 234 F.Supp. 2d 1208, 1215 (D.Wyo. 2002)("New and improved policies are meaningless if they are not followed."); FISHER v. KOEHLER, 692 F. Supp. 1519, 1566 (S.D.N.Y. 1988)("...[T]he depressing reality is that while commissioners come and go, problems linger on, and present and future inmates are entitled to the assurance that these problems will be, and remain, redressed.").

60. However, changes in the personnel in the prison administration do not moot an injunctive claim, unless the claim is against a policy or conduct that is 'personal' to particular officials. This suit is for injunctive relief from the Plaintiff continually being subjected to adverse treatment, as part of an ongoing Campaign of Harassment, and this Court is the one that decided it was to proceed in a manner that was not 'personal' to particular officials. SEE: DE NO. 10, pp. 11, paragraph 2; SEE also: SANTIAGO v. MILES, 774 F. Supp. 775

(W.D.N.Y. 1991)(changes in the prison administration did not obviate the need for injunctive relief against a long-standing pattern of racial discrimination). This argument is the same as it applies to this case in that, TDCJ & Defendants as a whole, have a long-standing pattern of discriminating against 'writ-writers' and 'Jail-House Lawyers', like the Plaintiff. Also it is clear that discrimination and way of thought is system-wide, in regards to 'Jail-House Lawyers'.

### II. Plaintiff's claims for injunctive relief are not moot, because the Plaintiff indicates his problems are ongoing, on the BC Unit.

61. Here, Plaintiff's claim for injunctive relief is not moot, because the Plaintiff has proven with his evidence that the claims are ongoing, even though he was transferred in retaliation to a new unit.

62. The Plaintiff incorporates by reference the Chronology of events in his PLAINTIFF'S AMENDED & SUPPLEMENTED MOTION FOR A TRO & PRELIMINARY INJUNCTION FOR PLAINTIFF TO BE RETURNED TO THE MCCONNELL UNIT AND NOT BE SUBJECT TO ANY FURTHER TRANSFERS TO OTHER TDCJ-ID UNITS, at Sec. III., No. 13-16, pp. 5-6, & at Sec. III., c., No. 24-28, pp. 11-37; in the records as DE No. 102.

63. The Plaintiff also incorporates by reference the Chronology of events in his PLAINTIFF'S DECLARATION IN OPPOSITION TO DEFENDANT RICHARDSON'S MOTION FOR SUMMARY JUDGMENT (DE No. 93) & DEFENDANT'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR A TRO AND PRELIMINARY INJUNCTION TO BE RETURNED TO THE MCCONNELL UNIT (DE No. 100), attached as EXHIBIT ZZ.

64. This is being done to reduce redundancy in the information and events that establish the chronology that is the basis for this argument, and the further arguments throughout this filing.

65. These chronologies establish the fact, with the supporting evidence, that the ongoing Campaign of Harassment was originated by MAJOR ADAM GONZALEZ and MAJOR EVELYN CASTRO, who orchestrated the retalitory campaign of adverse acts

against the Plaintiff on the McConnell Unit through 2011-2014, and by their examples of conduct, motivated unit staff to continue a ongoing Campaign of Harassment against the Plaintiff, even in their absence.

66. Their involvement now continues as **ADAM GONZALEZ** is the Head Warden of the Bill Clements Unit, and **EVELYN CASTRO** is the Head Warden of the McConnell Unit, who had the Plaintiff transferred to a far more violent unit in retaliation for his decision to redress his grievances at a TDCJ level, and in litigation in multiple courts in Texas. This was also retaliating for Plaintiff's repeatedly contacting the press for a public purpose, that was published.

67. The fact that the Plaintiff's evidence proves that the transfer was not motivated by the false claims of medical reasons from the Defendant, that the Plaintiff's evidence proves his chronology of events with **GONZALEZ & CASTRO**, all shows how the act of the transfer itself is an additional act of retaliation as well. This case cannot be moot because a act of retalition had him seperated from the McConnell Unit to begin with.

68. The retalitory Campaign of Harassment originated & orchestrated by both **GONZALEZ & CASTRO** included, but is NOT limited to both of their personal involvement in the following acts:

    (1) conducted retalitory cell searches of Plaintiff's cell, where they destroyed legal materials, confiscated legal materials being prepared for this very Court for other inmates, and confiscated the Plaintiff's personal property as well;

    (2) on more than one occassion they had Plaintiff's typewriter also confiscated for periods of time, to further disrupt Plaintiff's efforts to redress his issues, and assist other inmates in this very Court; and

    (3) **GONZALEZ** himself refused to investigate complaints by the Plaintiff, purposely put the Plaintiff's life in danger, and then made sure that he was assigned to investigate the life in danger investigation himself.

69.  Given the fact that the retalitory conduct continues on the Bill Clements Unit, is worse than the conduct on the McConnell Unit in many ways, he has only been on the BC Unit for less than ninety (90) days, the continued involvement by the actual orchestrators of the ongoing Campaign of Harassment, the continued escalating of adverse acts committed against the Plaintiff on both units; there is no way for this case to be considered MOOT.

70.  Also as a reminder this suit is for permanent injunctive relief, and that it should apply to any unit that is committing the adverse acts, regardless of the fact of who is the Head Warden, but based on the fact the acts are being committed in retaliation by any unit's staff.

71.  These assertions are not mere conclusory allegations, are proven by the Plaintiff's evidence, admissions made by unit staff, and Plaintiff's multiple eye-witnesses statements, already in the evidence.

72.  This is the reason for the Plaintiff filing his MOTION TO AMEND THE ORIGINAL COMPLAINT, to include the addition of Defendants **ADAM GONZALEZ, EVELYN CASTRO, & BOBBY LUMPKIN** (Lori Davis' replacement as **Director of TDCJ**), for the fact that **CASTRO & GONZALEZ** actually orchestrated the ongoing Campaign of Harassment itself, and the fact that **BOBBY LUMPKIN** should be added for the fact that he is the best person to provide injunctive relief, over multiple units, at a system-wide level; and that the Plaintiff based off his Original Complaint has exhausted all remedies against TDCJ itself for this case.

73.  This is also the reason the Plaintiff filed his MOTION to JOINDER in the Defendant GONZALEZ, and also filed a MOTION to have LORI DAVIS replace Warden Jeffery Richardson as the main Defendant.

74.  Since the Plaintiff is a PRO SE litigant, without the legal experience to properly articulate every claim & proper defendant, it can be argued that he has properly exhausted his administrative remedies against the Director, by:

(1) in his Original Complaint stating: "The amount of evidence dispels any type of suggestion that Plaintiff's plight arose from a single instance of type of negligence or ineptitude, rather, Plaintiff is challenging a pattern of conduct, that simply amounts to a policy, whereby prison officials have consciously ignored the ongoing Campaign of Harassment against the Plaintiff, for years." SEE: DE No. 01, pp. 27, No. 65.

(2) The multiple STEP 1 Grievances in the record in this case, were all answered by the Unit Grievance Office & Unit level administration (Wardens & Majors), and every Step 1 has a statement similiar to this: "TAKE THIS AS NOTICE OF INTENT BY LAW TO SUE.", on the bottom of every Step 1 Grievance. This means that all unit staff had NOTICE, and;

The multiple STEP 2 Grievances in the record in this case, were all answered by TDCJ's Central Grievance Office & their investigators, who work at a system-wide level, work for Director BOBBY LUMPKIN, and every Step 2 has a statement similiar to this on the bottom of it as well: "TAKE THIS AS NOTICE OF INTENT BY LAW TO SUE.". This means that TDCJ had NOTICE of intent to file, they answered & responded to every one of the STEP 2's, they decided to ignore the complaints & return the grievances without any relief, they were answered at a system-wide level as they answer Step 2's from EVERY unit in TDCJ, so it is clear that the Plaintiff has voiced his complaints, and exhausted his full remedies at a TDCJ system-wide level.

75. This is why the Plaintiff argued additionally that he is pursuing his injunctive relief for every unit, at a system-wide level, as he has no way to predict where the retaliation will continue, where original McConnell Unit staff who participated are at now, and the fact that TDCJ has a history of treating 'writ-writers' and 'Jail-house Lawyers', with acts of discrimination. SEE e.g., JOHNSON v. RODRIGUEZ, 110 F.3d 299 (5th Cir. 1997); MORRIS v. POWELL, 449 F.3d 682 (5th Cir. 2006)(inmate filed for retaliation & retalitory transfer, for being a writ-writer). The courts have numerous cases across Texas in both State and Federal courts, proving TDCJ's allowing retaliation on unit level 'writ-writers' & 'Jail-house Lawyers' for years, it's not a secret.

76. The Plaintiff's complaint alleges a concrete, particularized, actual injury that is traceable to TDCJ's system-wide decision to allow unit staff to conduct ongoing Campaign of Harassments against 'writ-writers' & "Jail-house Lawyers' all across Texas, just like the Plaintiff. This injury should be redressable by a decision from this Court forcing TDCJ to change its practices.

77. This is why the Plaintiff argues in this filing and his other MOTIONS that the Plaintiff seeking relief from a condition that stems from a system-wide policy, who then is transferred to a different facility within the same system, where staff from the originating unit are at as well, where the objectionable policy also applies, states a claim, and this case is not moot.

78. Also in regards to the grievances, all of the documents attached to the original complaint, should be viewed as incorporated into the complaint. SEE: FED. R. CIV. P. 10(c).

79. This is why the Plaintiff argues here & in his MOTIONS that if some slight adjustment in the complaint was required to make it clear that he was challenging a system-wide problem, leave to amend should be granted to his MOTION. SEE e.g., NELSON, 271 F.3d at 897; LOPEZ v. SMITH, 203 F.3d 1122, 1127-28 (9th Cir. 2000)(en banc); NOLL v. CARLSON, 809 F.2d 1446, 1448 (9th Cir. 1987).

80. Or in another way to correct this, the Court using its inherent jurisdiction, can also construe the Original Complaint liberally, as the Plaintiff has argued, and add the additional defendants immediately.

81. The Plaintiff should not be required to file multiple suits to garner the original relief sought in this suit, to be free from the ongoing Campaign of Harassment of retalitory adverse acts, when he has already litigated this suit for the past over two (2) years, has sufficient evidence in the record to stop two seperate Motions to Dismiss, & has sufficient evidence to force relief.

82.  This fact remains that this suit is not moot at all, due to these facts:

(a) this suit is filed for permanent injunctive relief at a system-wide level, based off the complaint & it's exhibits itself;

(b) the retalitory Campaign of Harassment has intensified & continued on the Bill Clements Unit;

(c) the transfer of the Plaintiff to a unit ran by one of the orchestrators of the ongoing Campaign of Harassment, where he allows it to continue there as well, proves the case is not moot;

(d) the orchestrators of the ongoing Campaign of Harassment should also be added as defendants, based on their personal involvement, which also proves that relief is needed at multiple units; and

(e) the case should have the defendant added that can provide the type of injunctive relief needed, i.e. relief on multiple units, and that shows that BOBBY LUMPKIN should be added as a Defendant to effectuate the needed injunctive relief at a system-wide level, or at least for both the McConnell and Bill Clements Unit, at a minimum.

### III. Plaintiff's claims over his transfer, that it was an act of retaliation, is proven by the evidence & TDCJ's deviation from standard practices to transfer the Plaintiff, prior to award of any relief.

83.  The Defendant also argues in his MOTION that the Plaintiff's transfer and his arguments over the transfer are moot, because the Plaintiff does not have liberty interest in a interstate transfer. While that is true, the Plaintiff does have the right to be free from a transfer that was done in retaliation, to place him on a far more violent unit, in an effort to deter him from his pursuing his redressing of his grievances against TDCJ staff.

84.  The Plaintiff incorporates by reference the Chronology of events in his PLAINTIFF'S AMENDED & SUPPLEMENTED MOTION FOR A TRO & PRELIMINARY INJUNCTION FOR PLAINTIFF TO BE RETURNED TO THE MCCONNELL UNIT AND NOT BE SUBJECT TO ANY FURTHER TRANSFERS TO OTHER TDCJ-ID UNITS, at Sec..III., No. 13-16, pp. 5-6, & at Sec. III., c., No. 24-28, pp. 11-37; in the records as DE No. 102.

85. The Plaintiff also incorporates by reference the Chronology of events in his PLAINTIFF'S DECLARATION IN OPPOSITION TO DEFENDANT RICHARDSON'S MOTION FOR SUMMARY JUDGMENT (DE No. 93) & DEFENDANT'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR A TRO AND PRELIMINARY INJUNCTION TO BE RETURNED TO THE MCCONNELL UNIT (DE No. 100), attached as EXHIBIT ZZ.

86. This is being done to reduce the redundancy in the information and events that establish the chronology that is the basis for this argument, and the further arguments throughout this filing.

87. This Court should take NOTICE that the Plaintiff's EXHIBITS contain very relevant information in regards to the arguments for this MOTION in the cover-pages for each EXHIBIT as well.

88. These chronolgies & evidence establish the fact, with the supporting level evidence as well, that without the retalitory motive for the transfer, that the transfer would not have occurred.

89. Although **"a prisoner enjoys no constitutional right to remain in a partic-ular institution."** MURPHY v. MISSOURI DEP'T OF CORRECTION, 769 F.2d 502, 503 (8th Cir. 1985), and although generally prison officials **"may transfer a prison-er 'for whatever reason or for no reason at all,'"** OLIM v. WAKINEKONA, 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983)(quoting MEACHUM v. FANO, 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976)), a prisoner **"cannot be transferred in retaliation for the exercise of a constitutional right."** PONCHIK v. BOGAN, 929 F.2d 419, 420 (8th Cir. 1991)(citing MURPHY); MURPHY, 769 F.2d at 503.

90. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retalitory motice the complained of incident --- such as this retalitory

PAGE 23

transfer as in this case at bar -- would not have occurred. SEE: **WOODS v. SMITH 60 F.3d 1161, 1166 (5th Cir. 1995).** In other words, the Plaintiff must prove that but for his legal actions against the prison & TDCJ, he would not have been transferred to the Bill Clements Unit.

91.  This Honorable Court should note in the chronology of events surrounding the Plaintiff's transfer gave rise to an inference of retaliation. That the inference was then strengthened by evidence that the Defendants deviated from their normal procedure of transferring a inmate with heat restrictions, and the transfer was the result of a breach of attorney-client privilege, & then using that information for a strategic advantage to transfer the Plaintiff.

92.  This is also coupled with the fact & admission made by CO RANGEL on the morning of the retalitory transfer admitting that the Plaintiff was moved because CASTRO had it done, admitting: **"Yeah I hear Bill Clements sucks ass, and it took Castro's ass pulling some major strings in Huntsville to pull the shit off."**

93.  In addition to the chronology already in the record, the evidence in this case supports the following factual chronology, in regards to the transfer:

   (a) in May 2017 the Plaintiff did NOT have a heat temperature extreme or direct sunlight restrictions from medical;

   (b) that in June after the filing of a property claim grievance for having two fans (EX. II), that TDCJ staff, NOT medical staff had restrictions for both temperature extremes & direct sunlight;

   (c) that due to this the Plaintiff had his highest heat sensitivity scores in his life throughout the remainder of 2017 and all of 2018;

   (d) that also due to this the Plaintiff had every single medical & mental health heat temperature restriction, direct sunlight restriction, and humidity retrictions (6 total), again ensuring his highest scores;

   (e) that in 2018 in March - May, TDCJ & ML classification had over 200 heat sensitive inmates moved in groups of 20-30 at a time, to other units with cool beds;

(f) that in 2018, even with the Plaintiff having his highest heat scores of his life, that he was NOT subject to transfer for his heat restrictions;

(g) that in 2019 the Plaintiff started the process of lowering his scores by the removal of multiple heat stress indicative medications;

(h) that in March - May of 2019, TDCJ & ML classification had over 100 more heat sensitive inmates moved in groups of 15-25 at a time, to other units with cool beds;

(i) that in 2019, even with the Plaintiff still taking some medications that were heat stress indicative medications, that he again was NOT subject to transfer for his heat restrictions;

(j) that in 2020 the Plaintiff continued the process of lowering his scores by the removal of every heat stress indicative medication that medical & his own research identified as a poiklothermic or potentiator from his medication lists;

(k) that in 2020 the Plaintiff had three of the six restrictions removed from his restrictions list, once again lowering his score again;

(l) that in March - May of 2020, TDCJ & ML classification had over 65 more heat sensitive inmates moved in groups of 15-20 at a time, to other units with cool beds;

(m) that in March 2020, EVELYN CASTRO returned to the McConnell Unit as the new Head Warden, and she was one of the original staff members that orchestrated the ongoing Campaign of Harassment against the Plaintiff;

(n) that in May - Septemeber of 2020, CASTRO ensured that the Plaintiff was blocked from access to 'respite' areas, even though he had unlimited access in 2018 and 2019, and that the Plaintiff was forced to suffer his first heat induced seizure in years due to CASTRO's orders;

(o) that in October 2020, the Plaintiff began settlement negotiations with his assigned counsel in case 2:18-CV-328, for injunctive relief;

(p) that in November & December of 2020, that CASTRO & her agents targetted, read, opened, & copied Plaintiff's legal mail, without him present, and discovered Plaintiff's true strategy, behind his claims being for only injunctive relief, and no monetary damages as previously believed;

(q) that the breaches of attorney-client confidentiality continued into 2021;

(r) that on January 19, 2021, the Plaintiff was attempted to be moved to a far more violent prison (Bill Clements), using the information in the breached letters for a strategic advantage in case 2:18-CV-328 & this case, to avoid the injuctive relief altogether;

(s) that the Plaintiff was returned to the McConnell Unit the same day he left, due to the Darrington Unit refusing to house him;

(t) that then on February 3, 2021, the Plaintiff was moved off the unit to the far more violent prison (Bill Clements), after successfully using the information gained in the multiple breaches of attorney-client confidentiality, for a strategic advantage in both cases;

(u) that throughout the time periods of 2017 until Feburary 3, 2021, that the Plaintiff was subjected to the adverse actions of staff in an on-going Campaign of Harassment orchestrated by CASTRO & GONZALEZ; where CASTRO is the current Head Warden, on the McConnell Unit; and

(v) that throughout the time period of February 8, 2021, until present, that the Plaintiff was subjected to the adverse actions of staff in an on-going Campaign of Harassment orchestrated by CASTRO & GONZALEZ, where GONZALEZ is the current Head Warden, on the Bill Clements Unit.

94. When the Plaintiff was moved both on January 19, 2021, and again on February 3, 2021, he was the ONLY inmate being moved off the unit that day for heat restrictions, he was the ONLY inmate being moved off the unit that day for any reason, and he was moved in the coldest months of the year for a heat restriction score.

95. This Court should find from the chronologies referenced and the above one as well, that TDCJ deviated from their normal procedures in moving inmates that had heat sensitivity scores, by their moving the Plaintiff in January, not in March - May, like every other year; and that this is further evidenced that the Plaintiff was targetted, as NOT ONE other inmate left with him, which again deviated from TDCJ's normal procedures for moving heat restricted inmates.

96. This Court should find that since the Plaintiff was not moved in the years 2018, 2019, and 2020, when he had higher scores than now, that without

the strategic knowledge gained in an act of breach of attorney-client confidentiality, the Plaintiff would not have been moved in 2021, as he has the lowest scores he has had in four years, was not considered a risk the first three years, and he is not a true risk for anything to do with heat.

97.   This Court should also find that the Defendant's affidavit & screenshots are not indicative of true medical reasons for Plaintiff's transfer, that they could have been entered by any TDCJ staff with access, were not entered by a medical provider as claimed, but were put there by TDCJ.

98.   The Defendant also claims that the Plaintiff's preemptive assertions over his safety on the Bill Clements Unit are not a liberty interest, but the truth is this: 1) the Plaintiff was assaulted on the Bill Clements Unit in his first twenty-one days on the unit, after not being assaulted on the McConnell Unit once in ten years; and 2) the Plaintiff being transferred to a far more dangerous prison as a way to deter him from pursuing his redressing of his constitutional rights, does implicate a violation of the Plaintiff's rights. SEE, e.g. MORRIS v. POWELL, et al., 449 F.3d 682 (5th Cir. 2006)(retaliatory transfer to a fr more dangerous prison not a de minimis act, and was sufficient to support a retaliation claim); PARKER v. CARPENTER, 978 F.2d 190, 192-93 (5th Cir. 1992)(retalitory transfer to more violent section of the prison was sufficient to support retaliation claim).

99.   Many other courts have also held that retalitory transfers of inmates in the process of exercising their constitutional right of access to the courts, access to the press on a public legitimate issue, or the redressing of their grievances, are a serious deprivation principle, long upheld by the courts. SEE: GOMEZ, et al., v. VERNON et al., 255 F.3d 1118 (9th Cir. 2001)(affirming district court's judgment & injunctive relief over retalitory transfers of multiple inmates of a class); SPRUYETTE v. HOFFNER, 181 F.Supp. 2d 736 (W.D.

PAGE 27

Mich. 2001)(retalitory transfer over contact with the press media); RAUSER v. HORN, 241 F.3d 330 (3d Cir. 2001)(retalitory transfer over exercising rights to religious freedom); GOFF v. BURTON, 91 F.3d 1188 (8th Cir. 1996)(retalitory transfer over inmate accessing the courts); SIGGERS-EL v. BARLOW, 412 F.3d 693, 701-02 (6th Cir. 2005)(retalitory transfer); WILLIAMS v. MEESE, 926 F.2d 994, 998 (10th Cir. 1991)(Job denials & transfers in retaliation).

100.  Also it should not be forgotten the fact the Plaintiff has had complete access to many programs, privileges, and rights barred by the transfer. SEE: DE No. 102, pp. 35, for comparison chart on deprivations. One other thing is also the FACT that since his transfer the Plaintiff is barred from receiving treatment for his PTSD diagnosis from the military. On the McConnell Unit he was allowed to attend group therapy sessions, individual therapy sessions with a retired Marine, mental health professional, and take courses directed by mental health on how to achieve ways to treat his PTSD, without the use of medications that cause the Plaintiff serious side effects. None of this is available on the Bill Clements Unit, and Plaintiff has not been treated for his PTSD since his arrival, with access to those rehabilative programs. SEE e.g., RIZZO v. DAWSON, 778 F.2d 527, 531-32 (9th Cir. 1985)(exclusion from programs due to retalitory transfer); PRICE v. WALL, 428 F. Supp. 2d 52, 55 (D.R.I. 2006)(transfer resulting in denial of required rehabilitive treatment). SEE also: EXHIBIT VV, for grievances on these issues.

101.  The Plaintiff does NOT suffer from a serious medical condition that requires or warrants his being in an air-conditioned cell, he has not had that need or access for the past ten years, and will do fine without it for the next ten years.

102.  The Plaintiff also dos NOT take Anticonvulsants associated with heat stress, he does NOT take any Anticholinergics associated with heat stress, he

does NOT take any Antihistamines associated with heat stress, he does NOT take any Antipsychotics associated with heat stress, he does NOT take any Diuretics associated with heat stress, he does NOT take any Antidepressants associated with heat stress, he does NOT take any Beta Blockers associated with heat stress, and NONE of his medications are considered Anhydrotics, Poikilothermics, or any Potentiators associated with heat stress.

103.  There is no way without the retalitory motive, after a breach in attorney-client privilege, that the Plaintiff would have been moved off the McConnell Unit as the State Classification Committee had him there ten plus years, as it was the safest place for him, and he does NOT have a medical legitimate issue to be moved from the unit, which is a 24 hour, LEvel One, Geriatric medical facility.

104.  The Defendants' interest in the administrative moving of one inmate out of over 144,000 inmates is minimal to non-existent, and the only benefit to the Defendants in the transfer of the Plaintiff is that this case and also case 2:18-CV-328 could be dismissed on the grounds of mootness, which this Plaintiff predicted would happen, in retaliation for his exercising his rights, and for the Defendants this no more than business as usual.

105.  This Court should find that there was no OBJECTIVE reason to move the Plaintiff off the McConnell Unit, and the evidence proves that not for the retalitory motive the Plaintiff would have never been transferred.

### VII. OBJECTIONS

106.  This Court should deny Defendant's motion for summary judgment because the defendants answer does not allege all the elements of his defense and it therefore does not support his motion for summary judgment. SEE: IENCO v. AN-GARONE, 429 F.3d 680, 684-85 (7th Cir. 2005).

## VIII. PLAINTIFF'S NOTICE TO THE COURT

107. The Court should take NOTICE that the Plaintiff's responses are both UNPERFECTED, than the versions that the Plaintiff planned & was researching. These are some of the reasons for that:

(a) the Plaintiff was seperated from his legal materials from February 3, 2021, until April 1, 2021;

(b) that upon arrival on the Bill Clements Unit the Plaintiff was missing thousands of pages of legal materials, that included notes & more from this case, which TDCJ has not yet found;

(c) that Plaintiff's multiple requests since his arrival for a legal session in the BC Law Library have been ignored & denied;

(d) that multiple requests made by the Plaintiff for the reasearch materials needed for this case, to the BC Law Library, for use of their 'Book-mobile' styled remote access were ignored or denied;

(e) that the Plaintiff has been trying since February 8, 2021, to get access to simply view his medical records, so he can make notes and quote them for this Court, and every attempt has been ignored and denied by the BC medical records department;

(f) that the Plaintiff's mother sent a money order, using next day air, in March, 2021, to the BC medical records department to pay for some of the medical records they would not let the Plaintiff view, and after receipt of the money order, they still refused to turn over the medical records for use in this Court;

(g) that certified legal mail filled with exhibits for copying in this case, sent to attorney Robert Virden, went missing, and the investigation conducted by the USPS, claims that the BC unit never gave it to them;

(h) that the BC Law Library and ADAM GONZALEZ personally have forced the Plaintiff to mail out legal materials, he had stored on the ML Unit with no problems for years;

(i) that the BC Law Library confiscated without return fifteen legal books, claiming they are personal property, not legal materials, & that even though the Plaintiff told them about his deadlines, the books were still confiscated;

(j) that the Plaintiff has attempted everything he can think of to have the missing legal materials & legal books returned & has been fully ignored at every attempt, including his filed grievances as well; and

(k) the BC Unit went on a full lockdown on 4/26/21, which has Plaintiff confined to his cell 24/7, and stopped him from doing required legal research for these motions, which including the updating of the both drafts & originals of these motions & their responses as well.

108.   The Plaintiff gives NOTICE that should he be able to get back other copies that went missing, medical records he was denied, and more relevant information, that the Plaintiff reserves the right to supplement this response and the EXHIBITS to it as well.

## IX. CONCLUSION

109.   Given the competent summary judgment evidence, the Plaintiff has more than demonstrated that the Defendant has violated his constitutional rights, that the transfer of the Plaintiff was motivated by a retalitory motive and used information gained in a breach of attorney-client privilege to move the Plaintiff, that the transfer would not have happened without that retalitory motive, that the transfer was not based off medical reasons, that the Defendant's summary judgment evidence is flawed & should be deemed inadmissible, that this case is not moot for any reason, and the Plaintiff has defeated all the elements of dismissal under the standard of mootness.

110.   Since the Plaintiff has overcome the mootness claims, this suit should be allowed to proceed to trial.

111.   The purpose of the Summary Judgment Motion is a valuable judicial tool. Because the consequences are so severe, however, this Court must guard against the premature truncation of legitimate lawsuits merely because of an indigent inmate is the Plaintiff, or his un-skilled presentations.

**PAGE 31**

## X. PRAYER

112.  For the above reasons, the Plaintiff prays that the Court deny the Motion for Summary Judgment and allow Plaintiff's claims to continue since he has demonstrated there is a live controversy as well as a genuine issue of material fact. Plaintiff further prays for all other relief to which he might be also entitled to justly by law.

Respectfully Submitted,

DATED: 05/06/2021

FRED HOFFMAN, III, PRO SE
TDCJ# 1662898

## INMATE DECLARATION

113.  I, FRED HOFFMAN, III, TDCJ# 1662898, being presently incarcerated at the Bill Clements Unit, in Potter County, Texas, declare under penalty of perjury that the foregoing MEMORANDUM IN RESPONSE TO DEFENDANT RICHARDSON'S MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT is true and correct.

EXECUTED on this ___6th___ day of ___May___, 2021.

FRED HOFFMAN, III, DECLARANT
TDCJ# 1662898

## CERTIFICATE OF SERVICE

I, FRED HOFFMAN, III, do hereby certify that a true carbon copy of the foregoing MEMORANDUM IN RESPONSE TO DEFENDANT RICHARDSON'S MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT, has been served by placing same in the United States mail, first class, postage prepaid, on this 05/07/2021, addressed to:

ATTORNEY GENERAL OF TEXAS
Law Enforcement Defense Division
ATTN: MR. JONATHAN PENA
P.O. Box 12548
Austin, Texas 78711-2548

FRED HOFFMAN, III, PRO SE
TDCJ# 1662898

PAGE 32