IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FRED HOFFMAN, III,<br>   Plaintiff,<br>v.<br>JEFFERY RICHARDSON, et al.,<br>   Defendants. | § § § § § § § | CIVIL ACTION NO. 2:18-CV-333 |

**PLAINTIFF'S SUPPLEMENTAL EXHIBIT 15 TO AMENDED MOTION FOR TRO & PRELIMINARY INJUNCTION FOR PLAINTIFF TO BE RETURNED TO THE MCCONNELL UNIT**

BRIEF DESCRIPTION: Ombudsman complaint for falsified & retalitory

TOTAL PAGES WITH COVERSHEET: 10

DESCRIPTION: This is the statement given for the Ombudsman complaint filed by Attorney Robert Virden over the falsified & retalitory disciplinary case given to the Plaintiff, after reporting the officer's prior misconduct to rank. This statement also does include the information in the complaint for the fact that while discussing the complaint with CO NEWMAN, that CO WISEMAN purposely tried to induce a seizure in the Plaintiff, by her shining her flashlight directly into the Plaintiff's face and turning her flashlight off and on real fast. This is recorded on camera and the Plaintiff advised unit staff to save the footage of that incident.

Also included is a copy of the falsified case, which the Disciplinary Hearing Officer (DHO) CPT. FLOWERS held the hearing, without the Plaintiff present, with a false claim that the Plaintiff refused to attend it.

Plaintiff has been advised by staff that this case has been already overturned, but he is still waiting on documentary confirmation of that.

IN THE DEPARTMENT OF CRIMINAL JUSTICE

OF THE STATE OF TEXAS

IN AND ON THE BILL CLEMENTS UNIT

POTTER COUNTY, TEXAS

---

| | |
|---|---|
| FRED HOFFMAN, III, TDCJ# 1662898 | OFFENDER |

---

MY STATEMENT FOR FALSE DISCIPLINARY CASE 20210158321 ON 4/15/21

---

TO WARDEN GONZALEZ, UGO, CGO, DHO, & ALL TDCJ LEVEL INVESTIGATORS,

Comes now, FRED HOFFMAN, III, the injured party and respectfully declares the following facts in the above matter and will offer the following:

The following declaration/statement is true and correct, and can be also verified by the ONLY impartial witness to the incident: TLV/SURVEILLANCE cameras at Central desk on ECB building, & all C-pod cameras on ECB; it can also be verified by eye-witness: CO WISEMAN; it can also be verified by my follow-up conversations with CPT. FLOWERS, so there is no way any of this is in question and all are valid facts & events (verifiable).

I am accused of being out of place by CO JARMAN at 09:30 PM, for "going on phone in HSC when in fact said inmate had no authorization to be in such place, and she also charged me for "...additionally stated to Officer C. Jarman COIV that had a lay-in to be on phone when in fact inmate Hoffman knew such statement was a lie."

First, here is a breakdown of the events to show that the case is a false, retalitory, & frivolous case, that was NOT investigated properly, that was NOT attempted to be informally resolved by ANYONE, and the cameras were not even reviewed, which PROVE everything I am saying.

 a) At 9:30 PM CO JARMAN was in Central, NOT C-pod, so we never talked to each other on 4/15/2021 at all, and she is the officer who opened my cell door from Central at 9:30 PM;

 b) I never walked further than 4-5 feet from my cell, because CO JARMAN immediately called CO WISEMAN (C-pod rover) on the phone from Central, and I waited for the call to finish. I never walked towards the phone and was in front of my cell the entire time.

PAGE 1

c) I cannot open my own celldoor, I was racked up at 9:30PM, CO WISEMAN had the door opened over the radio, and CO JARMAN opened it; so I can NOT be out of place & it is impossible for me to open my own door;

d) CO WISEMAN was told by CO JARMAN to rack me back up, and I was out of the cell less than 90 seconds, with no chance to get near a phone;

e) I was asked by CO WISEMAN for the lay-in from the prior day, that showed my attorney-client call from 11:30AM on 4/14/2021, this was to prove I was trying to contact my Power of Attorney to answer the questions from the previous day, and CO WISEMAN said she was going to show it to rank in an effort to explain why I should be able to make the call;

f) CO JARMAN therefore never saw the layin, never talked to me once, and I gave the layin to CO WISEMAN;

g) At 12:36AM on 4/16/21 was the first time CO JARMAN came onto C-pod, and that was the first time I ever talked to her. I never said I had any lay-in to be on the phone to her, the lay-in was NOT even discussed as CO WISEMAN had taken it hours earlier to rank, and it is absolutely ridiculous that she claims that I tried to use a layin from 4/14/2021 to get on the phone a day later.

h) Cameras will show I was in the cell at 9:29PM, CO JARMAN opened the door from Central, per CO WISEMAN's request, I never got on a phone, and CO JARMAN was NEVER present on C-pod till the next day.

i) This means that CO JARMAN had no business writing me a case, as she has no personal knowledge of what transpired between me and CO WISEMAN, as she was NEVER present; and she was the one to open the door to begin with herself, according to CO WISEMAN.

j) I ask permission for everything I do in regards to that phone, rovers on either shift or card will CONFIRM this, which is how CO WISEMAN got my door open as she had already agreed to let me out to use it. CO JARMAN who has been targetting me for some time now, threatening me, & more; overruled her decision from Central and had me racked back up.

Second, now I will give a detailed timeline that will correspond to the TLV camera footage my lawyer will be having the Court secure, so it is not deleted, along with background required information.

#1 - Since my arrival on the Bill Clements Unit, once it became public knowledge

PAGE 2

that I am a Jailhouse Lawyer, that I litigate my grievances, and that I am currently redressing grievances against Bill Clements staff for continuing harms; I have been targetted by rank & staff, and have been also threatened over my redressing my grievances in Ombudsman level complaints and Step 1 Grievances.

#02 - This is a continuing harm, that has followed me from my previous unit, and this retaliation is even worse on the Bill Clements Unit. It is very clear this unit operates on a totally different level, tolerates these actions by staff, and even openly encourages them.

#03 - Even though I am a G-2 level offender, due to being penalized for my heat sensitivity scores, I am housed on the HIGH SECURITY building, where I am DENIED dayroom access, denied recreation access, and DENIED phone access on a daily basis. These are just some of the issues I am currently trying to redress here, including the use of flashlights that could cause me to suffer seizures.

#04 - One of those officers that has been targetting me, threatening me, and harassing me in general is CO JARMAN, who goes out of her way to harass me when on her shift.

#05 - On 04/14/2021 I had a layin for a attorney-client phone call with my counsel one Mr. Joel De La Garza for 11:45AM. The call lasted over an hour and he made quite a few requests of me, in regards to the case. These requests required responses for him to prepare for court.

#06 - On 04/15/2021 at 5:40 PM I was on C-Pod working as an SSI, which I normally do on a consistent basis, as 2 weeks ago the SCC moved over 14 SSI's off the unit, from the HIGH SECURITY building (ECB).

#07 - CO NEWMAN came onto the pod to work at shift change, and I immediately went to her and asked permission to call my Power of Attorney in California at 9:30PM (7:30PM their time), so I could have her contact my attorney with the responses requested by my attorney, and to conduct legal research. This is a normal request as phone access after 9PM is DENIED, every single day I have lived on C-pod. CO NEWMAN agreed to the request, and also talked about my working as an SSI.

PAGE 3

#08 - CO JARMAN was working Central and was watching the cameras at this time, when she radioed to CO NEWMAN that she should rack me up, and not to let me work as an SSI. I complied with the new order, went in the cell, and CO NEWMAN confirmed that she would let me make the call at 9:30PM.

#09 - This type of conduct is normal for CO JARMAN who consistently uses the cameras to follow me around when I am working, or in the dayroom. This is the fourth time she has done something like this, via the cameras.

#10 - CO WISEMAN came onto the pod about 30 minutes later and replaced NEWMAN, so I re-stated my request to her for the phone call to my Power of Attorney, so I would be able to respond to my attorney's requests. I also showed the layin from 04/14/21, that showed my original attorney-client call on it, as proof I had the attorney-client call to begin with. WISEMAN agreed to let me make the call as well, just like NEWMAN did, and told me to remind her later on in the night for it.

#11 - At 9:25 PM I reminded her about the call, and she radios CENTRAL to JARMAN for my cell door to be opened. The door is opened and I exit the cell.

#12 - As soon as I exit the cell the phone rings on C-Pod and WISEMAN goes to answer it. I stay standing near the table right in front of my door, as I wait for WISEMAN.

#13 - JARMAN called her as soon as she opened my door from CENTRAL, and WISEMAN is explaining why she let me out. JARMAN tells her something, and WISEMAN instantly becomes very hostile sounding, & tells me to go back in my cell. I comply with the order, and ask for a ranking officer to talk to.

#14 - WISEMAN comes up to my door and I ask what happened, and she tells me: "JARMAN said to rack you up, you can't use the phone." I again request to speak to rank, as this call is very important, and WISEMAN asks for the layin from 4/14/21, which I give her. She claims: "I am going to go show it to the Captain, and explain what is going on.", and she leaves.

#15 - At around 11:15PM another officer (heavy-set hispanic male) comes to the pod to do count, and I explain the issue again to him & re-request rank.

PAGE 4

#16 - At 12:36 AM CO JARMAN & CO WISEMAN come to my cell and JARMAN asks me about the call I was trying to make. I explain the issue again to her, and why I needed to talk to my Power of Attorney. I also explain that the denial of phone access after 5PM violated the ORDER from Deputy Director Oscar Mendoza, & Director Bobby Lumpkin, that we are to have phone access from 5AM until midnight, until the return of contact visits.

#17 - I also explain the importance of being able to make calls to my Power of Attorney, who facilitates contact with multiple attorneys for me, so I can respond in a timely fashion to their requests. (ACTIVE OMBUDSMAN)

#18 - CO JARMAN responds that she does not know who Mr. Mendoza is, and tells me that I will not be able to make calls anytime she is on shift.

#19 - At no time does either WISEMAN or JARMAN mention a case, the layin, all they talk about is that I will not be allowed to make a call, which is obvious as the phones are already off by now.

#20 - At 1:55 AM that heavy-set hispanic male officer comes back, and tells me he is taking my statement for a case from CO JARMAN, for being out of place on the phone at 9PM on 4/15/21. THE CASE FOR THE LYING SUPPOSEDLY WAS NOT ON THE CASE AT THIS TIME, I HAD HIM READ EVERY SINGLE WORD ON THE I-210 BEFORE I GAVE A STATEMENT. SO OBVIOUSLY THE ENTIRE CASE WAS RE-DONE AFTER I GAVE MY STATEMENT, AND I WAS NEVER GIVEN NOTICE OF THE NEW ONE. THE ORIGINAL WORDING ALSO CLAIMED IIACTUALLY MADE IT TO THE PHONE, OUT OF PLACE, WHICH WAS A LIE. THE CURRENT CASE IS AN ACT OF FALSIFICATION OF GOVERNMENT RECORDS, AND TAMPERING WITH GOVERNMENT RECORDS AT A MINIMUM.

#21 - I give my statement to him, explain the issues from the beginning again, that I cannot be out of place on the phone as I never touched a phone, I was directly in front of my cell & walked back in, and that the cameras need to be reviewed as this is all lies.

#22 - I also explain I cannot be penalized by CO JARMAN for this, when she is the one that opened my celldoor from CENTRAL herself, she NEVER talked to me about the issue at any time near 9PM, and never per policy tried to conduct an informal resolution. Also she was NOT even present on the pod herself at all at that time, and was watching on camera ONLY.

PAGE 5

#23 - I again request rank at this time, over the false case & the entire issue over the phone usage. I also state I have an ACTIVE ombudsman over the issues with the phone access as well. (CPT. PRECIADO interviewed me). He states he will inform rank about my request.

#24 - At 2:21 AM CO WISEMAN & CO NEWMAN come to my door, and NEWMAN wants to know about my request for rank. I explain everything all over again to her as well, and re-iterate my request for rank.

#25 - The entire time I am talking to CO NEWMAN, CO WISEMAN is taking out her flashlight and keeps flashing it directly in my eyes. She keeps turning the beam off and on the entire time CO NEWMAN is talking, and this is a verifiable fact on the cameras.

#26 - This was done as my STEP 1 (2021075672) over my seizures and flashlight usage is widely known & talked about, and she was trying to induce a seizure in me out of spite, over the incident & in retaliation.

#27 - This also had an Ombudsman complaint over it, and CPT PRECIADO interviewed me for that one as well back in February, so staff has plenty of NOTICE that I am a seizure patient, affected by the abuse of flashlight beams.

#28 - TLV CAMERA FOOTAGE HAS BEEN REQUESTED SAVED ALREADY OVER THIS INCIDENT, AS CAMERAS WILL SHOW THE LIGHT FLASHING AT ME, AND CONFIRM JARMAN's TRUE LEVEL OF INVOLVEMENT. MY ATTORNEY WILL ALSO BE REQUESTING FOOTAGE THROUGH THE COURT.

#29 - At 2:26 AM CO WISEMAN returns to tell me that SGT. VILLAREAL has been told about my request for rank, but that he is too busy to respond.

#30 - At 2:39 AM CPT. FLOWERS arrives at my cell, and once again I explain all that happened. CO WISEMAN is again standing there, and this time she is continually talking to FLOWERS over me & interrupting me, and lies making a new claim that I told her I was trying to call my attorney, not my Power of Attorney, which makes no sense.

#31 - I cannot even make an attorney-client call from the blue phones, as the calls are recorded, and I never said that. All I did was give her the layin from the call on 4/14/21, to prove I had the original call with my attorney, after Mr. Holt in the Law Library set up the call.

PAGE 6

#32 - CPT. FLOWERS listens to WISEMAN and not me, walks off while I am still talking, and ignores my complaints.

#33 - The layin is CLEARLY for 4/14/21, not 4/15/21, and there was NEVER a claim by me to CO NEWMAN, CO WISEMAN, or CO JARMAN to call my attorney, I very clearly specified that I was needing to call my Power of Attorney in California, to respond to my attorney's requests from the previous day.

#34 - At no time was I on the phone at all, at no time was I out of place as CO JARMAN opened my celldoor at the request of CO WISEMAN, and I went back in my cell immediately after hearing WISEMAN tell me to. I was outside my cell less than 2 minutes and never even came close to a phone.

#35 - Please place this statement in the official record for both the case that was falsified & retalitory by JARMAN, in the record for the OMBUDSMAN complaint over the falsified case & retalitory act of trying to induce a full blown seizure in me by WISEMAN, and in the record for the OIG level complaint about to be filed.

CO JARMAN knowingly and intentionally caused this falsified case to proceed in retaliation for my trying to redress complaints against her prior actions with rank & my redressing grievances against BC staff. She knew the case was a falsified case when she wrote it, that I was never out of place, never lied, and that I had permission from CO WISEMAN & CO NEWMAN to make a call & permission from CO WISEMAN to exit the cell.

CO WISEMAN knew about my seizures and complaints over flashlight usage, as I complained to her before about it, but she still tried to induce the seizure. They repeatedly break TDCJ's policies and the law, and I will pursue these full blown violations of the Texas Penal Code & this incident as far as justice will require it.

Respectfully Submitted,

DATED: 04/22/21

FRED HOFFMAN, III, INJURED PARTY
TDCJ# 1662898
Bill Clements Unit
9601 Spur 591
Amarillo, Texas 79107-9606

## INMATE DECLARATION

I, FRED HOFFMAN, III, INJURED PARTY, TDCJ# 1662898, being presently incarcerated at the William P. Clements Unit, in Potter County, Texas, declare under the penalty of perjury the foregoing statement is true and correct.

EXECUTED on this 22ND day of APRIL, 2021.

_____
FRED HOFFMAN, III, DECLARANT
TDCJ# 1662898
Bill Clements Unit

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct carbon copy of the foregoing MY STATMENT FOR FALSE DISCIPLINARY CASE 20210158321 ON 4/15/21, that was written by the DECLARANT, was sent via USPS first class mail, postage prepaid, on this the 22ND day of APRIL, 2021, and was addressed to:

Mr. Robert N. Virden, P.C.  
Attorney at Law  
3419 Westminster Ave.  
Dallas, Texas 75205-1387

and

Mr. Joel De La Garza  
Attorney at Law  
802 N. Carancahua St., Ste 1300  
Corpus Christi, TX 78401-0021

_____
FRED HOFFMAN, III, DECLARANT
TDCJ# 1662898
Bill Clements Unit
9601 Spur 591
Amarillo, Texas 79107-9606

CC: FILE

ENCLOSURES (I-60 sent to TLV office)

PAGE 8

TDCJ DISCIPLINARY REPORT AND HEARING RECORD

CASE: 20210255257  TDCJ-ID/SID/OFFENDER NAME: HOFFMAN, FRED GEORGE III
UNIT: BC  HSNG: HSC1  14 B  JOB: I/S MEDICAL SQ 07  ID: 109
CLSS: L3  CUST: G2  PRIMARY LANGUAGE: ENGLISH  LMHA RESTRICTIONS: NONE
SRDE: MI / GEN  OFF.DATE: 04/15/21  09:30 PM  LOCATION: BC HIGH SEC
TYPE: I.O

### OFFENSE DESCRIPTION

ON THE DATE AND TIME LISTED ABOVE, AND AT BC HSC-PHONES, INMATE: HOFFMAN, FRED GEORGE III, TDCJ-ID NO. 01662898, WAS GOING ON PHONE IN HSC WHEN IN FACT SAID INMATE HAD NO AUTHORIZATION TO BE IN SUCH PLACE. ADDITIONALLY STATED TO OFFICER C. JARMAN COIV THAT HAD A LAY-IN TO BE ON PHONE WHEN IN FACT INMATE HOFFMAN KNEW SUCH STATEMENT WAS A LIE.  CS

CHARGING OFFICER: JARMAN, C. COIV  SHIFT/CARD: 2 2

### INMATE NOTIFICATION

IF APPLICABLE INTERPRETER,
TIME/DATE NOTIFIED: ____ BY:(PRINT) ____
YOU WILL APPEAR BEFORE HEARING OFFICER 24 HOURS OR MORE AFTER RECEIPT OF THIS NOTICE. YOU HAVE THE RIGHT TO SUBMIT A WRITTEN STATEMENT AND MAKE A VERBAL STATEMENT. DO YOU WANT TO ATTEND THE HEARING? YES NO  IF NO, HOW DO YOU PLEAD? GUILTY (NOT GUILTY)
INMATE NOTIFICATION SIGNATURE: Fred Hoffman III  DATE: 4/17/21
BY SIGNING BELOW, YOU GIVE UP YOUR RIGHT TO 24-HOUR NOTICE AND AUTHORIZE THE HEARING OFFICER TO PROCEED WITH THE HEARING.
INMATE WAIVER SIGNATURE: ____  DATE: ____

### HEARING INFORMATION

HEARING DATE: ____ TIME: ____ INTERPRETER SIGNATURE: ____
EXPLAIN BELOW IF HEARING WAS NOT HELD WITHIN SEVEN DAYS, EXCLUDING WEEKENDS AND HOLIDAYS, FROM THE OFFENSE DATE: ____

INMATE STATEMENT: ____

OFFENSE CODES:  27.0  33.0
 INMATE PLEA: (G, NG, NONE) |____|____|____|____|
FINDINGS: (G, NG, DS)  |____|____|____|____|

### PUNISHMENT

LOSS OF PRIV (DAYS) ____  REPRIMAND ____
*RECREATION (DAYS) ____  EXTRA DUTY (HOURS) ____
*COMMISSARY (DAYS) ____  CONT. VISIT SUSP THRU __/__/__
*PROPERTY (DAYS) ____  CELL REST (DAYS) ____
* _____ (DAYS) ____
INMATE SIGNATURE FOR RECEIPT OF FINAL REPORT: ____

HEARING OFFICER (PRINT) ____  WARDEN ____

(FORM I-47MI) CONTACT A STAFF MEMBER IF YOU DO NOT UNDERSTAND THIS FORM
(REV. 04-10) COMUNIQUESE CON UN MIEMBRO DEL PERSONAL SI NO ENTIENDE ESTA FORMA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FRED HOFFMAN, III,<br>    Plaintiff,<br>v.<br><br>JEFFERY RICHARDSON, et al.,<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:18-CV-333 |

PLAINTIFF'S SUPPLEMENTAL EXHIBIT 16 TO AMNDED MOTION FOR TRO & PRELIMINARY INJUNCTION FOR PLAINTIFF TO BE RETURNED TO THE MCCONNELL UNIT

BRIEF DESCRIPTION: Ombudsman complaint over confiscation of books

TOTAL PAGES WITH COVERSHEET: 12

DESCRIPTION: This is the Ombudsman complaint statement for the confiscation of the Plaintiff's personal property, which the BC Law Library decided, per TDCJ's Access to Courts Division in Huntsville, that ALL of the Plaintiff's legal books are personal property, even though EVERY SINGLE one contains materials NOT available in the Law Library.

The books were confiscated without return, and a disciplinary case was wrote as well. The case was written for the wrong code, and was written prematurely. Per policy the Plaintiff has seven days to conform to policy, before a case is wrote, and the case was wrote the same day as the confiscation. Also this is fully relevant as the Plaintiff conformed to policy in six days, and notified the BC Law Library as well.

The EXHIBITS to this complaint are still being copied and this will be one of the EXHIBITS that is supplemented later.

Please read for further details.