United States Courts
Southern District of Texas
FILED

MAY 2 8 2021

Nathan Ochsner, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FRED HOFFMAN, III, | § | |
|    Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 2:18-CV-333 |
| | § | |
| JEFFERY RICHARDSON, et al., | § | |
|    Defendants. | § | |

PLAINTIFF'S NOTICE, DECLARATION, & MOTION IN REGARDS TO SERIOUS
MAIL IRREGULARITIES DUE TO THE BC MAILROOM & BC STAFF WITH ALL
LEGAL MAIL MEANT FOR THIS COURT, ATTORNEY ROBERT VIRDEN, &
ATTORNEY JOEL DELAGARZA

TO THE UNITED STATES JUDGES OF SAID COURT:

Comes now, FRED HOFFMAN, III, TDCJ# 1662898, the Plaintiff, and is now

filing this NOTICE, DECLARATION, & MOTION in regards to the ongoing and still

continuing mail irregularities, due to the actions by the BC mailroom and also

BC staff members, as they continue to retaliate on the Plaintiff, as they are

causing the Plaintiff's legal mail to be delayed, destroyed, or otherwise im-

peded from use in this very Court. After review of the UNPERFECTED filing, the

Plaintiff is requesting intervention, in the form of an ORDER, to prevent the

further intentional mishandling of his legal mail. The Plaintiff will now pro-

vide the following information in support of this MOTION:

## I. LIBERAL CONSTRUCTION RULE

1.   Pro Se litigant pleadings are to be construed liberally and held to less

stringent standards, opposed to formal pleadings filed by attorneys, this Court

should liberally construe pleadings by PRO SE litigants despite the failure to

cite proper legal authority, confusion of legal theories, poor syntax and also

sentence construction, or litigants unfamiliarity with pleading requirements.

SEE: HAINES v. KERNER, 404 U.S. 519, 30 L.Ed.2d 652, 92 S. Ct. 594 (1972).

## II. DISCUSSION & DECLARATIONS

02.  For years the Plaintiff has had to continually waste time, money, and supplies, notifying this Honorable Court of mail irregularities, caused by the McConnell Unit mailroom, and now again by the Bill Clements mailroom & other Bill Clements unit staff. SEE: DE No's. 25, 26, 28, 30, 39, 54, 68, 71, 72, 96, 103, 104, 112, & 116.

03.  The Plaintiff is at his wits end on this matter, the stress this issue is causing him, on whether his legal mail will or will not ever arrive to either a court of law or an attorney, is now the cause of emotional stress, sleep deprivation, and much more.

04.  In his previous NOTICE to this Court, the Plaintiff took some of that blame upon himself, after being lied to by BC mailroom staff about the increase in postage rates during his transfer to the BC Unit. The Plaintiff now recants all of that, as will now be explained.

05.  Originally, the Plaintiff was told the increase was from $0.15 per letter rates, to $0.25, which is quite an increase. The Plaintiff was made to believe his not putting enough postage on the envelope was causing some of the delays.

06.  This was all a lie, trying to deflect blame to the Plaintiff, the rates did increase, BUT they increased from $0.15 to $0.20. This means that NONE of the delays were caused by the Plaintiff not knowing about the increase in the mail rates, because the Plaintiff places at a minimum two or three extra stamps on EVERY envelope he mailed to this Honorable Court, or any attorney.

07.  This extra postage more than covered that increase in postage rates, and every envelope in this record will show the amount of stamps on it, with that increase still was mailed first class mail. What all of this means is the mail irregularities are at NO TIME the fault of the Plaintiff, and he now asserts that his legal mail has been targetted at both units, purposely to delay and

interfere with the Plaintiff's access to the courts. This interference also constitutes a denial of access to courts, as repeatedly throughout this case the Plaintiff's legal mail never arrived to this Court.

08. For years now, Attorney Robert Virden, in Dallas, Texas, has been assisting the Plaintiff in this case, in making copies of exhibits for serving on the Defendant, as the Plaintiff has no access toa copy machine; and he has also been witness to the severe mail irregularities with BOTH mail he has sent to the Plaintiff, and mail sent from the Plaintiff to him.

09. Finally, both the Plaintiff and Virden have had to resort to the added expense of using certified & Priority mail, to ensure they both receive their mail from each other, and even then sometimes the mail NEVER arrives. Mr. Virden has had to file multiple complaints with the U.S. Post office, as TDCJ's mailrooms claim REPEATEDLY it has nothing to do with them.

10. This added expense is NOT affordable to the Plaintiff, but there is no way around it, as his original exhibits have disappeared to many times when mailed without the added tracking numbers.

11. This added expense also causes issues with mailing & deadlines, because the Plaintiff is limited to buying thirty stamps, on average every 15 days.

12. Also for almost a year now, Attorney Joel DeLaGarza has been appointed to the Plaintiff in a seperate act of litigation in this Court in case 2:18-CV-328, and has been representing the Plaintiff in that case. Their issues with the mail irregularities began immediately, and Mr. DeLaGarza was witness to the same issues that Mr. Virden was. This again affected mail sent to the Plaintiff by counsel, and mail sent to counsel.

13. Once again, both the Plaintiff an Mr. DeLaGarza BOTH have had to resort to the added expense of using certified & Priority mail, to ensure delivery also.

14.  This added expense is again NOT affordable to the Plaintiff, and should not be necessary to ensure his legal mail actually arrives to it's intended destination.

15.  These added expenses & costs have been covered by the kindness of their hearts, by Attorney Robert Virden, DPOA Karl Hodson, & DPOA Rosanna Hightower, as the Plaintiff could have never afforded all these stamps on his own.

16.  TDCJ policy prevents indigent inmates from using certified mail, absent a court order, so this was the only way to ensure the items could be mailed.

17.  These mail irregualrities affect BOTH mail sent by the attorneys and mail sent by the Plaintiff, so there is NO WAY the Plaintiff could be causing these issues in both directions, it is impossible. The Plaintiff asserts that he has absolutely NOTHING to do with issues with his mail.

18.  There is NO WAY that the United States Post Office can take all the blame either, as it is absolutely ridiculous to think with a different employee is sorting the mail, that the USPS is targetting the Plaintiff's legal mail.

19.  The ONLY constant factor in the handling of the Plaintiff's legal mail is the TDCJ mailrooms on the McConnell Unit & Bill Clements Unit. They are the ONLY staff that have the ability to cause all of these problems & delays.

20.  The Plaintiff asserts that while in route to the BC Unit he mailed legal mail to both Attorney Robert Virden & Attorney Joel De La Garza as well, from the Darrington, Huntsville, & Robertson Units, where NOT ONE mailroom staff member knew the Plaintiff was in litigation with TDCJ or knew he was a Jail-house Lawyer, all the mail was sent regular first class mail, not certified, and EVERY SINGLE envelope arrived in days to both of the attorneys, not in the weeks it takes most of the time from either the ML or BC Units.

21.  The Plaintiff also asserts that while in route to the BC Unit he mailed legal mail to this very Court, DE No. 91, from the Robertson Unit, where NOT ONE mailroom staff member knew the Plaintiff was in litigation with TDCJ or knew the Plaintiff was a Jail-house lawyer, and the mail was sent regular first class mail, not certified either. This mail again arrived in days, versus the sometimes weeks it takes from the McConnell and Bill Clements Units.

22.  The Plaintiff asserts that mail sent to Attorney Robert Virden and also Attorney Joel De La Garza by the Plaintiff has never arrived to either of them, and mail sent by both attorneys has also never arrived to the Plaintiff.

23.  The Plaintiff does NOT have multiple copies of all his relevant exhibits to keep having to replace them when they do not show up to either attorney, or even this Court. This is the whole point behind mailing everything for copying to Mr. Virden, so the Plaintiff can comply with court rules.

24.  For example, on April 11, 2021, the Plaintiff mailed his EXHIBITS GG-ZZ, which were to supplement his already filed exhibits, the envelopes for the Court & Asst. Attorney General Jonathan Pena were to big to fit through the mailslot on the mailbox in the Plaintiff's living areas, so as he has been forced to do repeatedly on the BC Unit, he placed them on top of the mailbox.

25.  The envelopes disappeared, so the Plaintiff thought they were mailed, but an inmate days later pointed out one of the envelopes to the Plaintiff in the trash can, it was empty and all the stamps had been pealed off the envelopes. Also missing that day out of the mail was mail sent to both attorneys. So this issue is OBVIOUS, another inmate wanted the stamps and stole them.

26.  So on April 30, 2021, the Plaintiff re-mailed out his EXHIBITS GG-ZZ to both the Defendant & this Honorable Court, with a NOTICE that some of the EXHIBITS were originals & the last copies he had, and that service would be done in full once the Plaintiff bought copies from the Clerk.

27.  However, this time the Plaintiff's Unit was on lockdown, with no access to the mailboxes, and a TDCJ officer (female/white) picked up the mail at the Plaintiff's cell door. She opened the small door on it and the Plaintiff was able to personally hand her legal mail for Attorney Robert Virden, EXHIBITS GG-ZZ for this Court, and EXHIBITS GG-ZZ for the defendant's counsel. NONE of these appear in the record yet, and the mail for Virden took 16 days to even show up. SEE BREAKDOWN ON PAGE 8.

28.  Those exhibits are VITAL to proving the issues in this case, and that is why the Plaintiff re-created EXHIBIT ZZ, & mailed it again with his Response in DE No. 121. There was over 175 pages of exhibits sent this Court.

29.  They prove a key argument for the Plaintiff that TDCJ staff, NOT medical staff added heat restrictions to his file, and much more. They also prove how the Plaintiff exhausted his administrative remedies against BC Head Warden Adam Gonzalez, and additinally provided over ten exhibits of medical files as well.

30.  The Plaintiff handing over the legal mail to the officer is all recorded on cameras as well.

31.  The Plaintiff asserts his legal mail is being targetted, and here is more proof of such. On page 8 is a listing of certified legal mail sent by the Plaintiff for the past couple of months, please compare this fact, as another inmate named DANIEL CLARK, TDCJ# 00287732, who is a Jail-House Lawyer, who recently also got moved to the BC Unit, and knows Attorney Robert Virden as well, sent him certified mail, identified as such, per the USPS website:

| MAILED BY USPS | MAILED TO/FROM: | USPS TRACKING # |
|---|---|---|
| 5/18/21 | ATTY. ROBERT VIRDEN | 7019 0140 0000 4485 3925 - 21 May |

32.  Mr. Clarks arrived in three days, the Plaintiff's all arrived 8-24 days, per the upcoming charts of the Plaintiff's legal certified mail and his mail to this Honorable Court.

## 33.   FRED HOFFMAN'S RECENT RELEVANT FILINGS IN THIS COURT & CAUSE NUMBER

| DATE MAILED | MOTIONS/NOTICES/EXHIBITS FOR THIS HONORABLE COURT | DE NO | DATE FILED | DAYS |
|---|---|---|---|---|
| 3/03/21 | EMERGENCY AMENDED & SUPPLEMENTED MOTOIN FOR A TRO & PRELIMINARY INJUNCTION FOR PLAINTIFF TO BE RETURNED TO THE MCCONNELL UNIT | 102 | 3/12/21 | 10 |
| 3/04/21 | MOTION FOR TDCJ'S DIRECTOR LORI DAVIS TO REPLACE ML HEAD WARDEN JEFFERY RICHARDSON FOR THE PURPOSE OF EFFECTING RELIEF | 120 | 4/30/21 | 56 |
| 3/04/21 | NOTICE TO THE COURT OF CONTINUING MAIL IRREGULARITIES | 103 | 3/15/21 | 12 |
| 3/04/21 | MOTION FOR LEAVE OF EXTENSION TO RESPOND TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TO DISMISS PLAINTIFF'S CLAIMS AS MOOT | 106 | 3/24/21 | 20 |
| 3/05/21 | SECOND NOTICE TO THE COURT OF DEFENDANT'S NON-COMPLIANCE WITH THE DISCOVERY RULES & MOTION FOR EXTENSION OF DISCOVERY DEADLINES | 107 | 3/24/21 | 19 |
| 3/05/21 | MOTION TO AMEND & SUPPLEMENT HIS ORIGINAL COMPLAINT | ___ | ___ | ___ |
| 3/09/21 | NOTICE TO THE COURT THAT HE IS OUT OF STAMPS | 104 | 3/19/21 | 10 |
| 3/18/21 | SUPPLEMENTAL EXHIBITS A-FF, RE: 102 MOTION FOR A TRO & 91 MOTION | 111 | 4/06/21 | 19 |
| 3/21/21 | NOTICE TO THE COURT HE IS OUT OF STAMPS AGAIN; NOTICE TO THE COURT OF DUE DILIGENCE; MOTION TO AMEND & SUPPLEMENT DE 91 | 112 | 4/09/21 | 19 |
| 4/08/21 | SECOND MOTION FOR TDCJ'S DIRECTOR LORI DAVIS TO REPLACE ML HEAD WARDEN RICHARDSON FOR THE PURPOSE OF EFFECTING RELIEF | 113 | 4/19/21 | 11 |
| 4/10/21 | MOTION FOR IN CAMERA INSPECTION OF SUPPLEMENTAL EXHIBITS 01-14 & MOTION TO SEAL SUPPLEMENTAL EXHIBITS 01-14 & SUPP. EXHIBITS 01-14 | 115 | 4/26/21 | 16 |
| 4/11/21 | MOTION TO JOINDER BC HEAD WARDEN ADAM GONZALEZ AS A DEFENDANT | ___ | ___ | ___ |
| 4/11/21 | EMERGENCY NOTICE HE IS OUT OF STAMPS & EMERGENCY MOTION FOR LEAVE OF EXTENSION TO RESPOND TO DISPOSITIVE MOTIONS | 116 | 04/28/21 | 17 |
| 4/30/21 | NOTICE TO THE COURT OF DUE DILIGENCE WITH MAIL IRREGULARITIES & SUPPLEMENTAL EXHIBITS GG-YY, RE: 102 MOTION & 91 MOTION FOR TRO | ___ | ___ | ___ |
| 5/07/21 | MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT & EXHIBITS ZZ, 15, & 16 | 121 | 05/17/21 | 10 |
| 5/07/21 | RESPONSE IN OPPOSITION TO DEFENDANT'S DE NO. 100 | ___ | ___ | ___ |
| 5/ /21 | NOTICE, DECLARATION, & MOTION IN REGARDS TO MAIL IRREGULARITIES DUE TO BC MAILROOM WITH ALL LEGAL MAIL MEANT FOR THIS COURT, ATTORNEY ROBERT VIRDEN, & ATTORNEY JOEL DELAGARZA | | ___ | ___ |

34. <u>FRED HOFFMAN'S RECENT RELEVANT MAIL & LEGAL MAIL TRACKING HISTORIES</u>

| DATE MAILED | DATE SCANNED BY USPS | MAILED TO/FROM: | USPS TRACKING # | DATE DELIVERED | DATE GIVEN TO FRED | DAYS IN ROUTE |
|---|---|---|---|---|---|---|
| 3/22/21 | 03/23/21 | ATTY. ROBERT VIRDEN | 7018 0360 0001 3992 1273 | 03/26/21 | | 04 |
| 3/24/21 | 03/24/21 | ATTY. JOEL DELAGARZA | 7018 2290 0001 1330 3916 | 03/30/21 | 4/02/21 | 09 |
| 4/01/21 | 04/02/21 | DFQA R. HIGHTOWER | 9505 5141 4457 1092 115494 | 04/07/21 | 4/09/21 | 08 |
| 4/01/21 | _____ | ATTY. JOEL DELAGARZA | 7018 2290 0001 1330 3913 | _____ | 4/13/21 | 12 |
| 4/02/21 | 04/02/21 | ATTY. ROBERT VIRDEN | 9402 7111 0803 6800 132897 | 04/06/21 | 4/15/21 | 13 |
| 4/10/21 | _____ | ATTY. JOEL DELAGARZA | | | _____ | __ |
| 4/15/21 | 04/16/21 | DFQA R. HIGHTOWER | 7017 1450 0000 0737 8024 | 04/20/21 | | 05 |
| 4/16/21 | 04/23/21 | DFQA KARL HODSON | 7018 0360 0001 3992 1471 | 04/28/21 | | 12 |
| 4/16/21 | 04/16/21 | ATTY. ROBERT VIRDEN | 7018 0360 0001 3992 1518 | 04/24/21 | | 08 |
| 4/16/21 | 04/28/21 | DFQA R. HIGHTOWER | 7018 0360 0001 3992 1570 | 05/05/21 | | 19 |
| 4/20/21 | 04/20/21 | ATTY. JOEL DELAGARZA | 7018 2290 0001 1330 4005 | 04/27/21 | 5/03/21 | 13 |
| 4/22/21 | 04/22/21 | OAG ATTY. GEN. J PENA | 7018 0680 0001 3688 5494 | 04/27/21 | 5/10/21 | 18 |
| 4/22/21 | 04/28/21 | ATTY. ROBERT VIRDEN | 7018 0360 0001 3992 1495 | 04/29/21 | | 07 |
| 4/26/21 | 05/03/21 | WITNESS GORDON SMITH | 7018 0360 0001 3992 1600 | 05/07/21 | | 11 |
| 4/29/21 | 04/29/21 | OAG ATTY. GEN. J PENA | 7020 0090 0000 7449 5722 | 05/12/21 | 5/14/21 | 15 |
| 4/30/21 | 05/07/21 | ATTY. ROBERT VIRDEN | 7018 0360 0001 3992 1358 | 05/15/21 | _____ | 16 |
| 4/30/21 | 04/30/21 | ODESSA WALDREP | 7018 0360 0001 3992 1594 | 05/07/21 | | 08 |
| 4/30/21 | 05/03/21 | ATTY. JOEL DELAGARZA | 7018 2290 0001 1330 3060 | 05/06/21 | 05/10/21 | 10 |
| 5/01/21 | 05/08/21 | ATTY. ROBERT VIRDEN | 7018 0360 0001 3992 1587 | 05/25/21 | | 24 |
| 5/06/21 | 05/12/21 | TX INMATES FAM. ASSOC. | 7017 1450 0000 0737 7621 | 05/18/21 | | 12 |
| 5/04/21 | 05/09/21 | ATTY. ROBERT VIRDEN | 9414 7111 0803 6869 323330 | 05/11/21 | 5/14/21 | 10 |
| 5/04/21 | 05/04/21 | ATTY. JOEL DELAGARZA | 7018 2290 0001 1330 3091 | 05/08/21 | 5/10/21 | 06 |
| 5/06/21 | 05/16/21 | ATTY. ROBERT VIRDEN | 7018 0360 0001 3992 1488 | 05/17/21 | | 11 |
| 5/07/21 | 05/13/21 | ATTY. ROBERT VIRDEN | 7017 1450 0000 0737 7669 | 05/17/21 | | 10 |
| 5/10/21 | 05/10/21 | ATTY. ROBERT VIRDEN | 9414 7111 0803 6864 347775 | 05/14/21 | 5/14/21 | 04 |
| 5/11/21 | 05/15/21 | DFQA R. HIGHTOWER | 7017 1450 0000 0737 7638 | 05/17/21 | | 06 |
| 5/11/21 | _____ | ATTY. ROBERT VIRDEN | 7019 0140 0000 4436 6159 | 05/21/21 | | 10 |
| 5/12/21 | _____ | ATTY. ROBERT VIRDEN | 7017 1450 0000 0737 7645 | | | |
| 5/12/21 | 05/14/21 | ATTY. ROBERT VIRDEN | 7017 1450 0000 0737 7652 | 05/21/21 | | 09 |
| 5/13/21 | _____ | ATTY. ROBERT VIRDEN | 7019 0140 0000 4436 6104 | 05/21/21 | | 08 |
| 5/18/21 | _____ | ATTY. ROBERT VIRDEN | 7015 1520 0001 8455 6895 | _____ | | __ |

It is easy to see the descrepencies in how long legal mail is held by the BC mailroom before mailing, how long before giving it to Fred, and much more.

35.  As can be clearly seen in the mail sent to this Court, via first class mail, the delays in the mailing by the Plaintiff, to the filing by the Court Clerk, spans from 10-56 days, which is ridiculous. DE No. 120 was mailed so long ago, that when it never was scanned into the record, the Plaintiff went ahead and mailed a second copy weeks later in DE No. 113.

36.  The delays in the certified mail going to Attorney Robert Virden span from 8-24 days to arrive, except the first one sent on 3/22/21, back before the BC Unit staff & mailroom truly knew who the Plaintiff was. The fact that arrived in four days, and Mr. Clark's arrived in three days to Mr. Virden, PROVES that the remainder of the Plaintiff's mail was targetted by the BC staff.

37.  The delays in the certified mail going to Attorney Joel De La Garza span from 9-13 days to arrive, except the mail that never even arrived or was mailed first class mail only, due to stamp limitations.

38.  Per TDCJ policy legal mail, & certified mail is normally supposed to be mailed the same day it is put in the mailbox by the Plaintiff, however that does not happen here at all.

39.  First, the mail is NOT even picked up by a mailroom employee, it is opened up by a TDCJ regular correctional officer, who is NOT certified to handle mail, who throws it in a bag, and takes it to the building's central desk. From there it is then transported over to the mailroom, by staff I have never seen.

40.  Also if staff is busy on some days they will flat out not even empty the mailbox, a fact discussed repeatedly in the record already, and the Plaintiff has witnessed his legal mail from a prior day still in the box, when he threw more legal mail on top of it, the next day.

41.  Also of note are the delays in when the mail arrived to the Unit, and when the Plaintiff actually received the mail. Policy grants upto two days for the mail to be delivered, but legal & certified mail is supposed to be done daily.

42. Those delays exceed upto nine days for some of the legal mail, after the arrival to the BC Unit. There is no excuse for the delays caused in all this mail, which is protected by Federal law.

43. To further prove this issue, the Plaintiff will be mailing this filing in certified mail to the Court, so please look at how long it takes to arrive and then compare that to the list on page 7. The Plaintiff predicts that when the BC mailroom sees the Plaintiff is now forced to mail his mail to this Court in certified mail, they will properly process the mail.

44. These continued delays, destroyed mail, and more, also cause the use of stamps that could be used for mailing of other legal mail, these are harms to the Plaintiff, and this very Court has warned of the complete dismissal of the case at bar, due to mailing issues outside the control of the Plaintiff.

45. The Plaintiff needed his supporting exhibits filed first, they were so large they required multiple envelopes, and this is why the response was sent after the exhibits.

46. Another issue of note, Officer JARMAN, who was involved in the incident were this very Court ordered the preservation of recorded footage from the night of April 16, 2021, in case 2:18-CV-328, is the same officer the mail is handed to every day she works in the central desk.

47. The Plaintiff has thoroughly documented this continued issue over the years, has no idea how to prevent it, TDCJ does not care about the issue, and gives a 'rubber stamped' answer to every grievance over the issues. SEE: EX. P, Q, and S from DE No. 111.

48. This continued interference over the years of this case, violates the Plaintiff's rights to access of the courts, on a non-frivolous claim, and is a harm to the Plaintiff, as the issues are causing an INCOMPLETE record for the purposes of Summary Judgment, and threats of outright dismissal of case.

## III. ARGUMENTS AND AUTHORITIES-

49.   This MOTION is unperfected as the Plaintiff's eighteen legal books were confiscated, and never returned. The Plaintiff has requested additional research materials from the Law Library with no response, and had 45,000 pages of legal materials conficated, that included Plaintiff's notes & materials on this subject, and forced this subpar filing. SEE: EXHIBIT A.

50.   Prisoners have long been held entitled to unobstructed and confidential communication with courts and with attorneys and their assistants. SEE e.g., PROCUNIER v. MARTINEZ, 416 U.S. 396, 419-22, 94 S. Ct. 1800 (1974); & SIMKINS v. BRUCE, 406 F.3d 1239, 1243 (10th Cir. 2008)("...[T]he principle that unimpeded transmission of inmate legal mail is the 'most obvious and formal manifestation' of the right of access to the courts, ... has been clearly established for some time now.").

51.   Interference with such communication violates the right to court access. SEE, e.g., SIMKINS, 406 F.3d at 1239, 1242-44 (10th Cir. 2008)(holding that the failure to forward legal mail, as prison procedure required, to a prisoner who was temporarily in a county jail, resulting in his failing to receive notice and to respond to a summary judgment motion, denied the right of access to court); GRAMEGNA v. JOHNSON, 846 F.2d 675, 677 (11th Cir. 1988)(allowing inmate mail to accumulate at a central location until "a sizable bundle had ammassed," then forwarding it, violated the right of access to courts of a prisoner who missed his appeal deadline as a result of a six-week delay caused by this policy).

52.   The Plaintiff asserts that he has been unable to properly litigate this claim after the breach of attorney-client confidentiality discussed in EXHIBITS 01-14 of his sealed exhibits to the Summary Judgment response, and the continued interference & intrusions in his communications with multiple attorneys.

53.   The Plaintiff asserts this invasion of legal privacy has inflicted 'actual

injury' in this case, as the Defendant obtained an unfair advantage in this case by reading, stealing, & targetting the Plaintiff's legal mail. SEE, e.g., CODY v. WEBER, 256 F.3d 764, 768-69 (8th Cir. 2001)(holding allegation that defendants obtained an unfair advantage in defending themselves against his claim by reading his legal papers stated a court access claim).

54.  The Defendant obtained that unfair advantage after discovering Plaintiff's strategy with counsel in case 2:18-CV-328, used that knowledge to have him then moved to another unit, all to be able to move this Court for dismissal for the case being now supposedly moot.

55.  The Plaintiff now moves for an ORDER from this Court that prevents the continued abuses he has suffered by by both the McConnell & Bill Clements mailroom that includes, but is not limited to the following:

   a) that all legal mail to the courts and attorneys be unimpeded;

   b) that Plaintiff's legal mail be mailed the same day it is placed in the mailbox;

   c) that Plaintiff's legal mail be delivered the same day it arrives to the Bill Clements Unit;

   d) that no legal mail ever be opened outside Plaintiff's presence again;

   e) that no ruling be made in the Defendant's motion for Summary Judgment, until all filings mailed by the Plaintiff, shown on page 7, have arrived to this Honorable Court;

   f) that the Plaintiff is provided a copy of the official court docket to compare to his filings, the Court's filings, and the docket he bought from the internet, for accuracy comparisons;

   g) that the lack of confidentiality in Plaintiff's attorney-client mail has also additionally caused a First Amendment claim; and

   h) that the Plaintiff has stated a court access claim as well.

56.  That the Defendant be required to produce all missing exhibits so far, the Plaintiff also believes to be a valid claim, as the Plaintiff has been request-

ing access to his medical records for three months now, with no answer by the BC medical records department, and this bars him from obtaining the records again. Also the records in EXHIBIT II were obtained through the Defendant's counsel, and are not obtainable by the Plaintiff, as they were discovery records.

<u>IV. PRAYER & CONCLUSION</u>

57.  The Plaintiff prays for all the above relief requested, and any other relief allowed by law.

Respectfully Submitted,

DATED: 05/24/2021

FRED HOFFMAN, III, PRO SE
TDCJ# 1662898

<u>INMATE DECLARATION</u>

I, FRED HOFFMAN, III, TDCJ# 1662898, being presently incarcerated at the Bill Clements Unit, in Potter County, Texas, declare under penalty of perjury that the foregoing NOTICE, DECLARATIONS, & MOTION is true and correct.

FRED HOFFMAN, III, PRO SE
TDCJ# 1662898

<u>CERTIFICATE OF SERVICE</u>

I, FRED HOFFMAN, III, TDCJ# 1662898, do hereby certify that a true and a correct carbon copy of the foregoing NOTICE, DECLARATIONS, & MOTION, as been served by placing same in the USPS mail, postage prepaid, first class, on this 24th day of MAY , 2021, and was addressed to:

Attorney General of Texas
Law Enforcement Defense Division
ATIN: MR. JONATHAN PENA
P.O. Box 12548
Austin, Texas 78711-2548

FRED HOFFMAN, III, PRO SE
TDCJ# 1662898